The STATE of Ohio, Appellee,

v.

HUFFMAN, Appellant.

[Cite as *State v. Huffman,* 165 Ohio App.3d 518, 2006-Ohio-1106.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050044.

Decided March 10, 2006.

520

Joseph T. Deters, Hamilton County Prosecuting Attorney, and James Michael Keeling, Assistant Prosecuting Attorney, for appellee.

Ravert J. Clark, for appellant.

Sylvia Sieve Hendon, Judge.

{¶ 1} Defendant-appellant, Mark A. Huffman, appeals his convictions for illegal use of a minor in nudity-oriented material, voyeurism, and pandering sexually oriented matter involving a minor. For the reasons that follow, we affirm the trial court's judgment with the exception of Huffman's felony sentences, which we vacate. We remand the cause for resentencing.

## I. Factual Background

{¶ 2} A young man and his parents contacted Reading Police Detective Terry Zimmerman to report a possible hidden camera in a tanning room at the Maximum Exposure Tanning Salon. The young man showed the detective a photograph of what appeared to be a camera lens hidden behind a circular fan.

{¶ 3} That afternoon, Detective Zimmerman went to the salon, where he encountered Huffman, the owner of the business. Detective Zimmerman pretended that he was interested in purchasing a tanning package for his wife. Huffman described the available tanning procedures and showed the detective the rooms where the procedures took place. As the detective entered one of the tanning rooms, he saw a camera hidden behind a circular fan in the wall, just as the young man's report had indicated.

{¶ 4} Detective Zimmerman obtained a search warrant for the salon and executed it that evening with other police officers. During their search, the officers found a wireless camera mounted behind the wall fan, as the detective had earlier observed. Another wireless camera was hidden behind a hole in the wall of a tanning-spray room. The officers determined that signals from the two cameras were fed through a wireless receiver into one of Huffman's DVD players.

{¶ 5} The officers recovered camera equipment as well as numerous DVDs containing videos of female patrons using the tanning rooms. The officers compared the recording dates and times of the videos with the tanning-visit dates on the salon's patron cards to identify Huffman's victims. The officers also recovered several DVDs that contained pornographic images of children.

{¶ 6} As a result of the investigation, Huffman was indicted for three counts of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(1); three counts of voyeurism involving a minor, in violation of R.C. 2907.08(C); two counts of voyeurism, in violation of R.C. 2907.08(B); 20 counts of pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322(A)(1); and one count of illegal cultivation of marijuana, in violation of R.C. 2925.04(A).

{¶ 7} Huffman filed a motion to dismiss the pandering counts, arguing that the pandering statute, R.C. 2907.322(A)(1), was unconstitutional. The trial court denied the motion.

{¶ 8} Huffman then waived his right to a jury trial, and the case proceeded to a bench trial. The court found Huffman guilty of two counts of illegal use of a minor, each of the five voyeurism counts, and two of the pandering counts. Huffman was acquitted of the remaining counts.

{¶ 9} The court imposed three-year prison terms on both counts of illegal use of a minor and four-year prison terms on both counts of pandering. The court imposed 180 days' incarceration on three of the voyeurism counts and 60 days' incarceration on two of the voyeurism counts. The court ordered the sentences to be served concurrently, for an aggregate term of four years in prison.

{¶ 10} On appeal, Huffman now challenges the trial court's denial of his motion to dismiss, the sufficiency and manifest weight of the evidence upon which he was convicted, and the trial court's imposition of more than the minimum prison terms.

## II. Huffman's Constitutional Challenges to R.C. 2907.322(A)(1)

{¶ 11} R.C. 2907.322 prohibits the pandering of sexually oriented matter involving minors. Huffman was convicted of violating R.C. 2907.322(A)(1), which provides, "No person, with knowledge of the character of the material or performance involved, shall * * * [c]reate, record, photograph, film, develop, reproduce, or publish any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality."

{¶ 12} In his first assignment of error, Huffman argues that R.C. 2907.322(A)(1) is unconstitutionally overbroad and vague. In analyzing a constitutional challenge to a statute, we are mindful that legislative enactments enjoy a

strong presumption of constitutionality.[1] To overcome this presumption, a person challenging a statute must prove that the statute is unconstitutional beyond a reasonable doubt.[2]

### A. States May Lawfully Proscribe Child Pornography

{¶ 13} The First Amendment does not protect child pornography. In *New York v. Ferber*,[3] the United States Supreme Court held that states may constitutionally proscribe the distribution of child pornography. The court held that this limitation on the freedom of speech is justified by the state's compelling interest in safeguarding the well-being of its children.[4] The court found that the distribution of child pornography is intrinsically linked to sexual abuse in two ways. First, the material survives as a permanent record of the victimization and abuse of a child.[5] Second, prohibitions on the material's distribution act as a means of controlling its production, thus preventing future abuse.[6]

{¶ 14} In *State v. Meadows*,[7] the Ohio Supreme Court applied *Ferber*'s reasoning in its consideration of R.C. 2907.322(A), the statute at issue here. Meadows was convicted of violating subsection (A)(5), which prohibits the possession or control of child pornography. The court held that the same child-protection interests recognized in *Ferber* to justify a ban on the distribution of child pornography justified a ban on its possession as well.[8] As a result, the court held that the statute did not violate the First Amendment.[9]

{¶ 15} The United States Supreme Court considered another of Ohio's child-pornography statutes[10] in *Osborne v. Ohio*.[11] The *Osborne* court concluded, as

1. See *State v. Collier* (1991), 62 Ohio St.3d 267, 581 N.E.2d 552.

2. See *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224.

3. *New York v. Ferber* (1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113.

4. *Ferber*, 458 U.S. at 756–757, 102 S.Ct. 3348, 73 L.Ed.2d 1113.

5. Id. at 759–760, 102 S.Ct. 3348, 73 L.Ed.2d 1113.

6. Id.

7. *State v. Meadows* (1986), 28 Ohio St.3d 43, 28 OBR 417, 503 N.E.2d 697.

8. Id. at 50, 28 OBR 417, 503 N.E.2d 697.

9. Id. at syllabus.

10. R.C. 2907.323(A)(3).

11. *Osborne v. Ohio* (1990), 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98.

the *Meadows* court had, that the interests described in *Ferber* warranted prohibitions on the possession and viewing of child pornography.[12]

{¶ 16} While the interests recognized by *Ferber* and *Osborne* justify prohibitions of pornography created using children, the United States Supreme Court later held that those interests are not implicated by pornography created without using children, material that has been termed "virtual child pornography."

## B. Ashcroft v. Free Speech Coalition

{¶ 17} In *Ashcroft v. Free Speech Coalition*,[13] the United States Supreme Court considered the constitutionality of the Child Pornography Prevention Act of 1996 ("CPPA"), which prohibited the possession or distribution of child pornography.[14]

{¶ 18} Under Section 2256(8) of the CPPA, child pornography was defined to include any visual depiction of sexually explicit conduct where "(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is, or *appears to be*, of a minor engaging in sexually explicit conduct; (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct; or (D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that *conveys the impression that* the material is or contains a visual depiction of a minor engaging in sexually explicit conduct." [15] (Emphasis added.)

{¶ 19} The "appears to be" prohibition of Section 2256(8)(B) reached a variety of visual depictions, including "virtual child pornography" created without the use of children.[16] The proscription of Section 2256(8)(D) went further by encompassing sexually explicit works pandered as child pornography, irrespective of their content.[17]

{¶ 20} The plaintiffs in *Ashcroft* challenged subsections (B) and (D) of Section 2256(8) as unconstitutionally overbroad. The plaintiffs argued that the "appears to be" and "conveys the impression" provisions of the subsections created a

12. Id. at 111, 110 S.Ct. 1691, 109 L.Ed.2d 98.

13. *Ashcroft v. Free Speech Coalition* (2002), 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403.

14. See former Section 2252(A)(a), Title 18, U.S.Code, amended April 30, 2003.

15. See former Sections 2256(8)(A) through (D), Title 18, U.S.Code, amended April 30, 2003.

16. *Ashcroft*, supra, 535 U.S. at 241, 122 S.Ct. 1389, 152 L.Ed.2d 403.

17. Id. at 243, 122 S.Ct. 1389, 152 L.Ed.2d 403.

chilling effect on the production of sexually explicit works protected by the First Amendment.

{¶ 21} The court noted that its earlier decisions in *Ferber* and *Osborne* had upheld state bans on child pornography because of the state's interest in protecting children exploited by the pornography production process.[18] But, the court reasoned, "[i]n contrast to the speech in *Ferber,* speech that is itself the record of sexual abuse, the CPPA prohibits speech that records no crime and creates no victims by its production."[19] As a result, the court struck down subsections (B) and (D) as overbroad. The court held that the prohibitions on pornography created without using real children encompassed materials beyond those described in *Ferber,* resulting in the abridgement of "the freedom to engage in a substantial amount of lawful speech."[20]

### C. R.C. 2907.322(A)(1) Is Not Unconstitutionally Overbroad

{¶ 22} Huffman argues that R.C. 2907.322(A)(1) is unconstitutionally overbroad because its proscriptions encompass virtual child pornography, which *Ashcroft* held to be protected by the First Amendment. Huffman contends that virtual child pornography so closely resembles pornography depicting real children that the state's proscription tends to inhibit lawful speech. Huffman reads *Ashcroft* too broadly.

{¶ 23} *Ashcroft* struck down a federal ban on virtual child pornography. But *Ashcroft* did not alter the Supreme Court's child-pornography jurisprudence: child pornography depicting real children remains unprotected speech.[21]

{¶ 24} As *Ashcroft* recognized, states may lawfully proscribe the distribution, possession, and viewing of child pornography if their statutes criminalizing child pornography are limited to works that depict explicit sexual conduct by children below a specified age.[22]

{¶ 25} Since *Ashcroft* was decided, courts across the country have rejected similar overbreadth challenges to state statutes aimed at pornography involving real children.[23] And federal courts have rejected overbreadth challenges to

---

**18.** Id. at 249–250, 122 S.Ct. 1389, 152 L.Ed.2d 403.

**19.** Id. at 250, 122 S.Ct. 1389, 152 L.Ed.2d 403.

**20.** Id. at 256, 122 S.Ct. 1389, 152 L.Ed.2d 403.

**21.** Id. at 245–246, 122 S.Ct. 1389, 152 L.Ed.2d 403.

**22.** Id. at 249–250, 122 S.Ct. 1389, 152 L.Ed.2d 403; *Ferber,* supra, 458 U.S. at 764, 102 S.Ct. 3348, 73 L.Ed.2d 1113.

**23.** See *State v. Hazlett* (2003), 205 Ariz. 523, 73 P.3d 1258; *State v. Bacon* (Feb. 28, 2005), Superior Court of Connecticut, Judicial District of New Haven, at Meriden, Case No.

provisions of the CPPA left undisturbed by *Ashcroft*, which applied if an actual minor was involved.[24] "There is nothing in *Ashcroft* to indicate that the court was prepared to start recognizing a First Amendment protection for child pornography involving actual minors."[25]

{¶ 26} R.C. 2907.322(A)(1) is by its terms limited to the depiction of sexual activity by a minor. "Minor" is statutorily defined as a person under the age of 18.[26] Ohio courts have held that because R.C. 2907.322 proscribes only pornography depicting an actual minor, *Ashcroft*'s protection of virtual child pornography is not implicated by the statute.[27]

{¶ 27} Only one Ohio court has sustained an overbreadth challenge to R.C. 2907.322(A)(5). In *State v. Tooley*,[28] the Eleventh Appellate District acknowledged that the Ohio Supreme Court had previously held that the statute did not violate the First Amendment, but reasoned that *Meadows* had been decided "well before" *Ashcroft*.[29] The court based its overbreadth determination upon subsection (B)(3) of R.C. 2907.322, which provides, "In a prosecution under this section, the trier of fact may infer that a person in the material or performance involved is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor." The court found that this language nearly mirrored the CPPA language held unconstitutional in *Ashcroft*, and concluded that the statute was unconstitutionally overbroad.[30]

CR030216984S, 2005 WL 758065; *People v. Campbell* (Colo.App.2004), 94 P.3d 1186; *Fink v. State* (Del.2003), 817 A.2d 781; *State v. Alexander* (2003), 204 Ill.2d 472, 274 Ill.Dec. 414, 791 N.E.2d 506; *State v. Fingal* (Minn.App.2003), 666 N.W.2d 420; *Griffin v. State* (2003), 317 Mont. 457, 77 P.3d 545; *State v. Howell* (2005), 169 N.C.App. 58, 609 S.E.2d 417; *Webb v. State* (Tex.App.2003), 109 S.W.3d 580; *Rutti v. State* (Wyo.2004), 100 P.3d 394.

24. *United States v. Peterson* (D.S.C.2003), 294 F.Supp.2d 797, affirmed (C.A.4, 2005), 145 Fed.Appx. 820; see, also, *United States v. Destio* (C.A.3, 2005), 153 Fed.Appx. 888; *United States v. Deaton* (C.A.8, 2003), 328 F.3d 454; *United States v. Kimler* (C.A.10, 2003), 335 F.3d 1132.

25. *Peterson*, supra, 294 F.Supp.2d at 802–803.

26. R.C. 2907.01(M).

27. *State v. Anderson*, 151 Ohio App.3d 422, 2003-Ohio-429, 784 N.E.2d 196; *State v. Eichorn*, 5th Dist. No. 02 CA 953, 2003-Ohio-3415, 2003 WL 21489413; *State v. Morris*, 9th Dist. No. 04CA0036, 2005-Ohio-599, 2005 WL 356801.

28. *State v. Tooley*, 11th District No. 2004–P–0064, 2005-Ohio-6709, 2005 WL 3476649, stay granted, 108 Ohio St.3d 1463, 2006-Ohio-570, 842 N.E.2d 535.

29. Id. at ¶ 48.

30. Id. at ¶ 52.

{¶ 28} We respectfully disagree with the *Tooley* court's reasoning. Instead, we are persuaded by the reasoning of the Ninth Appellate District in *State v. Morris*,[31] in which the court rejected an overbreadth challenge to R.C. 2907.322. With respect to the language in subsection (B)(3), the court held, "There is no indication that the provision * * * was intended to encompass virtual child pornography. Rather, we read the provision to permit what the common law has always permitted, that the State may prove its case with circumstantial evidence."[32]

{¶ 29} R.C. 2907.322(A)(1) clearly proscribes pornography that depicts an actual minor. Unlike the CPPA provisions struck down in *Ashcroft*, the statute does not attempt to criminalize the possession of virtual child pornography. Accordingly, we hold that R.C. 2907.322(A)(1) is not unconstitutionally overbroad.

### D. R.C. 2907.322(A)(1) Is Not Void for Vagueness

{¶ 30} Huffman further argues that R.C. 2907.322(A)(1) is void for vagueness. The vagueness doctrine is premised on the Fourteenth Amendment due-process requirement that laws give fair notice of offending conduct.[33] A criminal statute is void for vagueness if it fails to define a criminal offense with sufficient clarity for ordinary people to understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.[34] A greater degree of precision is required if a law inhibits the exercise of First Amendment freedoms.[35]

{¶ 31} In this case, the statute is not unconstitutionally vague. The plain language of R.C. 2907.322(A)(1) makes clear what conduct is prohibited.[36] A reading of the statute informs an ordinary citizen that its prohibitions apply to pornography depicting an actual minor.[37] The precision of the language leaves no

31. *State v. Morris*, 9th Dist. No. 04CA0036, 2005-Ohio-599, 2005 WL 356801.

32. Id. at ¶ 16.

33. *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110.

34. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, at ¶ 238.

35. See *Amani Servs. Corp. v. DOC Div. of Liquor Control* (2000), 137 Ohio App.3d 252, 256, 738 N.E.2d 451, citing *Hynes v. Mayor & Council of the Borough of Oradell* (1976), 425 U.S. 610, 620, 96 S.Ct. 1755, 48 L.Ed.2d 243; see, also, *Hoffman Estates v. Flipside, Hoffman Estates* (1982), 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362.

36. See *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 383, 618 N.E.2d 138.

37. See *Anderson*, supra, 151 Ohio App.3d at 171, 566 N.E.2d 1224.

discretion for the application and enforcement of the statute, describing with sufficient particularity what a person must do to commit a violation.[38]

{¶ 32} Huffman argues that advances in computer technology make it impossible for a person to distinguish between images created with actual minors and those that are not. So, Huffman contends, the statute deters him from exercising his right to possess virtual child pornography. We perceive no such problem.

{¶ 33} As the United States Supreme Court has recognized, a statute's scienter requirement may operate to eliminate any claimed vagueness.[39] R.C. 2907.322(A)(1) requires that an offender have "knowledge of the character of the material or performance involved." This scienter requirement has been held to be a constitutionally adequate indicium of scienter to uphold a pandering-obscenity conviction.[40] We conclude that the scienter requirement has a similar ameliorating effect on any asserted vagueness in R.C. 2907.322(A)(1).

{¶ 34} Because R.C. 2907.322(A)(1) is neither unconstitutionally overbroad nor unconstitutionally vague, we hold that the trial court properly denied Huffman's motion to dismiss. We overrule the first assignment of error.

### III. Sufficiency of the Evidence

{¶ 35} In his second assignment of error, Huffman argues that the evidence was insufficient to support his convictions. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must examine the evidence admitted at trial in the light most favorable to the prosecution and determine whether that evidence could have convinced any rational trier of fact that the essential elements of the crimes had been proved beyond a reasonable doubt.[41]

### A. Pandering Sexually Oriented Matter Involving a Minor

{¶ 36} Huffman argues that his convictions for pandering sexually oriented matter involving a minor, in violation of R.C. 2907.322(A)(1), were based upon insufficient evidence. Huffman's pandering convictions were based upon two images, marked as State's Exhibits 36 and 43. The images in question were each found on three different disks, marked as State's Exhibits 8, 10, and 11. The

---

38. See *Kolender v. Lawson* (1983), 461 U.S. 352, 361, 103 S.Ct. 1855, 75 L.Ed.2d 903; *Collier,* supra, at 271, 581 N.E.2d 552.

39. See *Hoffman Estates,* supra note 35.

40. See *State v. Burgun* (1978), 56 Ohio St.2d 354, 364, 10 O.O.3d 485, 384 N.E.2d 255.

41. See *McKnight,* supra note 34, at ¶ 70, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

disks had been recovered from the office area at Huffman's business. At trial, Huffman stipulated that he had been in sole possession of the disks.

{¶ 37} State's Exhibits 8, 10, and 11 consisted of compact disks enclosed in clear cases. The case jacket in State's Exhibit 8 was labeled on its front and side in black ink, with the handwritten notation "Internet Downloads Porn Disk # 2." The compact disk itself had the same handwritten words on it. A handwritten note attached to State's Exhibit 10, between its jacket and case, read, "Teen Closed." A handwritten note attached to the inside of the jacket on State's Exhibit 11 read, "Teen Open."

{¶ 38} For the image in State's Exhibit 43, the state presented the testimony of Vernon Warr, a police officer for Peoria, Illinois. Warr testified that he had worked as the primary investigator on a child-pornography and child-molestation case involving a man named Michael Hoevenaar. As a result of the investigation, Hoevenaar had been convicted and was serving a prison term.

{¶ 39} The victim of Hoevenaar's crimes was his young daughter, to whom we refer as MH. During his investigation, Warr had discovered on the Internet images depicting Hoevenaar's sexual abuse of MH. Warr identified State's Exhibit 43 as an image of MH and her father when MH was about eight years old. The image depicted MH performing fellatio on her father. Warr produced a certified copy of MH's birth certificate, which indicated that MH was still a minor at the time of the trial in the present case. Warr testified that he personally knew MH, and that she was a real child.

{¶ 40} Next, Susan Koteen, a special agent with the Florida Department of Law Enforcement, testified that she had investigated a sexual battery in Lake County, Florida, in 1997. The victim of the battery was an eight-year-old girl, to whom we refer as AM. As a result of the investigation, AM's father had been convicted of multiple counts of capital sexual battery of a child. Koteen identified State's Exhibit 36 as an image that had been recovered from AM's father's computer. The image contained a montage of four separate depictions, including one of AM performing fellatio on her father. Koteen testified that she knew AM, and that she was a real child.

### 1. Authentication of the Pornographic Images

{¶ 41} Huffman argues that the trial court erred by admitting State's Exhibits 36 and 43 into evidence, because the images had not been properly authenticated. Huffman contends that the state should have been required to present testimony from a person present when each image was taken, including either the perpetrator-creator of the image or the child victim depicted.

{¶ 42} The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in

question is what its proponent claims it to be.[42] Here, the state offered evidence to show that each exhibit was what the state claimed it to be—images obtained from disks recovered from Huffman's office.[43]

{¶ 43} Courts have held that the authentication requirement for pornographic images and materials is satisfied when the state offers evidence to show that each exhibit is what the state claims it to be. For example, pornographic magazines, including the images they contained, were held to be sufficiently authenticated by evidence that the magazines had been mailed to the defendant at his request;[44] and photographs, negatives, and a videotape were held to be sufficiently authenticated by evidence that the items had been in the defendant's trailer or otherwise in his possession.[45] Similarly, authentication was held satisfactory by a showing that the material had been recovered from the defendant's bedroom[46] or computer.[47]

{¶ 44} In this case, the state offered evidence to show that each exhibit was what the state claimed it to be. A police lieutenant testified that the images in question were each found on three different disks introduced as State's Exhibits 8, 10, and 11. He further testified that the disks were in the same condition that prevailed when they had been recovered from Huffman's office. Moreover, in his brief, Huffman concedes that the images were found on disks that had been "authenticated as recovered during the search—chain-of-custody." Because the essence of the offense itself was the possession and reproduction of the material, we hold that the trial court did not abuse its discretion in admitting the images into evidence.[48]

### 2. Sufficient Evidence of Reproduction

■ {¶ 45} Huffman argues that the state failed to prove that he had created, recorded, photographed, filmed, developed, reproduced, or published sexually oriented matter under R.C. 2907.322(A)(1).

---

**42.** Evid.R. 901(A).

**43.** See *State v. Johnson*, 3rd Dist. No. 2–98–39, 1999-Ohio-825, 1999 WL 455301.

**44.** *United States v. Nolan* (C.A.1, 1987), 818 F.2d 1015.

**45.** *United States v. Secrest* (Nov. 21, 2000), C.A.7 No. 99–4229, 248 F.3d 1161.

**46.** *State v. Williamson* (2001), 146 N.C.App. 325, 335–336, 553 S.E.2d 54.

**47.** *Bone v. State* (Ind.Ct.App.2002), 771 N.E.2d 710, 716–717.

**48.** See *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus.

{¶ 46} The state's computer-analysis expert, Cincinnati Police Specialist David Ausdenmore, testified that he had analyzed materials recovered from Huffman, including three computers and many pieces of removable media and hard drives that had not been installed in computer systems. Ausdenmore testified that the images on State's Exhibits 8, 10, and 11 had been on Huffman's computer.

{¶ 47} Ausdenmore reviewed files on one of Huffman's computers and determined that the computer had been used for Internet development. The images and data files on that computer were arranged in a hierarchy so that they indicated where on an Internet page those images could be viewed. Ausdenmore found the same type of hierarchical range of data on the disks when he examined them. In other words, the arrangement of the image files on the disks matched the mapping structure found on the hard drive of one of Huffman's computers. Ausdenmore opined that the disks were actually backups of data that had at one time been stored on the hard drive.

{¶ 48} Ausdenmore testified that the most common way to back up the contents of a hard drive was simply to create a compact disk of all the contents of that hard drive or a particular section of that hard drive, which would then match the directory structure of the hard drive. When asked about the labeling "Internet Downloads Porn," Ausdenmore further testified that images could be downloaded from the Internet and stored.

{¶ 49} Based on the evidence presented by the state, we hold that a rational trier of fact could reasonably have concluded that Huffman had reproduced the images, either by backing up the data that had been on his hard drive or by downloading it from the Internet.

### 3. Sufficient Proof that Actual Minors Were Depicted

{¶ 50} Next, Huffman contends that the state failed to prove that the images in State's Exhibits 36 and 43 showed actual minors participating or engaging in sexual activity. We find no merit in this contention.

{¶ 51} Courts have held that the question whether images are virtual or real is for the trier of fact.[49] The state need prove only that the images involve actual children, and "this may be done by a view of the images themselves, or by non-expert testimony."[50] Therefore, the state is not required to present any

---

**49.** See *State v. Bettis*, 12th Dist. No. CA–2004–02–034, 2005-Ohio-2917, 2005 WL 1385220, at ¶ 19; *State v. Steele*, 12th Dist. No. CA2003–11–276, 2005-Ohio-943, 2005 WL 516526, jurisdictional motion overruled, 106 Ohio St.3d 1463, 2005-Ohio-3490, 830 N.E.2d 1170; *United States v. Vig* (C.A.8, 1999), 167 F.3d 443; *United States v. Sims* (C.A.10, 2005), 428 F.3d 945.

**50.** (Citation omitted.) *United States v. Destio*, supra, 153 Fed. Appx. 892–893.

additional evidence or expert testimony to demonstrate that the images depict real children and not virtual children.[51] Juries are capable of determining whether a real child is depicted in a particular image.[52]

{¶ 52} Here, the state presented the testimony of Warr and Koteen, who personally knew the children depicted in the images, and who had been involved in the prosecution of their molesters. Thus, the state presented sufficient evidence from which a trier of fact could have reasonably inferred that the depicted children were actual children.

### B. Illegal Use of a Minor in Nudity–Oriented Material or Performance

{¶ 53} With respect to his convictions for illegal use of a minor in nudity-oriented material or performance, Huffman argues that the state failed to prove that lewd exhibitions or graphic displays were involved. R.C. 2907.323(A)(1) provides, "No person shall * * * [p]hotograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity." [53] The statute applies "where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals." [54]

{¶ 54} The Ohio Supreme Court has stated that the term "lewdness" is one in common usage: "Webster defines 'lewd' as: ' * * * sexually unchaste or licentious * * * lascivious * * * inciting to sensual desire or imagination * * *.' * * * 'Lascivious' is defined by Webster as: ' * * * inclined to lechery: lewd, lustful * * *, tending to arouse sexual desire * * *.' Webster's Third New International Dictionary (1986), 1301. The Oxford dictionary defines 'lascivious' as: 'inclined to lust, lewd, wanton.' The Oxford English Dictionary ( [2d Ed.]1989)." [55]

{¶ 55} Ohio courts have found sufficient evidence of lewdness in photographs of a 16-year-old girl's naked breasts and bikini line with visible pubic hair,[56] in

---

**51.** See *Bettis,* supra note 49; *United States v. Farrelly* (C.A.6, 2004), 389 F.3d 649.

**52.** See *United States v. Slanina* (C.A.5, 2004), 359 F.3d 356.

**53.** Huffman has not argued that the proper-purposes exception found in R.C. 2907.323(A)(1) applies in this case.

**54.** See *State v. Moss* (Apr. 14, 2000), 1st Dist. No. C–990631, 2000 WL 376434, citing *State v. Young* (1988), 37 Ohio St.3d 249, 525 N.E.2d 1363, reversed on other grounds in *Osborne v. Ohio,* supra.

**55.** *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 358, 588 N.E.2d 116.

**56.** *State v. Woods,* 9th Dist. No. 22267, 2005-Ohio-2681, 2005 WL 1283711, jurisdictional motion overruled, 106 Ohio St.3d 1547, 2005-Ohio-5343, 835 N.E.2d 728.

images of a pubescent juvenile female standing outside a bathtub with the camera focused on her breasts and genitals,[57] and in images of young women using the bathroom with their pubic areas clearly visible.[58]

{¶ 56} In this case, the state presented evidence of two digital videos of a 16-year-old girl as she used Huffman's tanning facilities on two different dates. The images were captured by a camera hidden behind a fan near the tanning bed. The camera was positioned to focus on the girl's genitals. During the recording of one of the videos, the camera was manually adjusted to capture a clearer image of the girl's genitals.

{¶ 57} Given the secretive nature of the videotaping and its blatant focus on the victim's genitals, we hold that the state presented sufficient evidence of lewdness to sustain Huffman's convictions for illegal use of a minor in nudity-oriented material or performance.

## C. Voyeurism

{¶ 58} Huffman also argues that his five convictions for voyeurism under R.C. 2907.08(B) and (C) were based upon insufficient evidence. He argues that the state failed to prove that he had photographed the victims, or that he had done so for the purpose of sexual arousal or gratification.

### 1. "Photograph"

{¶ 59} R.C. 2907.08(B) provides, "No person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another to *photograph* the other person in a state of nudity." (Emphasis added.) Division (C) contains identical language, with the additional element that the victim is a minor.

{¶ 60} Huffman argues that the verb "photograph" does not include the act of videotaping. He points to R.C. 2907.08(E), which provides, "No person shall secretly or surreptitiously *videotape*, film, *photograph*, or otherwise record another person under or through the clothing being worn by that other person for the purpose of viewing the body of, or the undergarments worn by, that other person." (Emphasis added.) He argues that the distinction made in R.C. 2907.08(E) between videotaping and photographing indicates an intent to exclude videotaping from R.C. 2907.08(B).

---

57. *State v. Haven*, 9th Dist. No. 02CA0069, 2004-Ohio-2512, 2004 WL 1103957, reversed in part on other grounds, 105 Ohio St.3d 418, 2005-Ohio-2286, 827 N.E.2d 319.

58. *State v. Stoner*, 2nd Dist. No. 2003CA6, 2003-Ohio-5745, 2003 WL 22429530.

{¶ 61} The state's evidence of voyeurism consisted of five video tracks recorded on two DVDs. Two of the tracks depicted the same female minor and, as we have already held, supported Huffman's convictions for illegal use of a minor in nudity-oriented material or performance. Huffman had filmed two more females, an adult and a minor, during their separate tanning sessions in a horizontal tanning bed. A fourth female had been filmed by another hidden camera as she used Huffman's "spray-on" booth. None of the victims knew that she was being filmed.

{¶ 62} Huffman admits that he videotaped the victims, but contends that he did not "photograph" them. We find this argument to be disingenuous. During closing argument at trial, Huffman's attorney conceded that the defense expert witness had testified that the recordings were a series of photographs. Specifically, the witness had testified that digital video is a series of digital still images that are put together "and then naked to your eye it looks like motion, same as a movie film, you know, a series of frames." Moreover, the state's expert witness testified that a digital image is simply a "digital representation of a photograph or other type of visual display." Thus, the state proved that Huffman had photographed the victims as contemplated by R.C. 2907.08(B) and (C).[59]

### 2. *Self-Gratification or Arousal*

{¶ 63} Huffman also argues that the state failed to prove that his actions were motivated by sexual arousal or self-gratification. The trier of fact may infer a person's intent from the surrounding facts and circumstances.[60] Courts have found a purpose to sexually arouse or self-gratify in cases where a voyeur kept autoerotic materials in his car while he peered through a home's window,[61] where a voyeur repeatedly peered through a home's window while apparently masturbating,[62] and where a voyeur climbed a ladder to peer through a window and watch a young girl as she dressed for school.[63]

{¶ 64} In this case, the state presented evidence that Huffman had enticed at least two of the victims to work at the salon in exchange for free tanning sessions.

59. See *State v. Ewers*, 6th Dist. No. E–04–047, 2005-Ohio-5024, 2005 WL 2334958 (defendant's admitted behavior in videotaping his victims fit the definition of voyeurism and constituted a sexually oriented offense).

60. See *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293; *State v. Horrigan* (Feb. 19, 1999), 2nd Dist. No. 17260, 1999 WL 148035.

61. *State v. Haldeman* (Nov. 22, 2000), 2nd Dist. No. 18199, 2000 WL 1726858.

62. *State v. Gonzales* (Mar. 12, 1999), 6th Dist. No. WD–98–057, 1999 WL 128580.

63. See *Huron v. Holsapple* (Aug. 8, 1997), 6th Dist. No. E–96–063, 1997 WL 457971.

Huffman had induced one of the victims to try a "spray tan" by offering the service at no charge when she expressed reservations about it. Huffman had filmed each of the victims without her knowledge or permission. Huffman had then kept the footage in the same office area where his other pornographic materials were discovered. Given Huffman's secretive tactics and his evident interest in sexually explicit material, the trier of fact could have reasonably inferred that Huffman's acts were done for the purpose of sexual arousal or self-gratification. Accordingly, we hold that the evidence was sufficient to support Huffman's convictions for voyeurism under R.C. 2907.08(B) and (C). We overrule his second assignment of error.

## IV. Weight of the Evidence

{¶ 65} In his third assignment of error, Huffman argues that his convictions were against the manifest weight of the evidence. On this record, we cannot say that the trier of fact clearly lost its way or that it created a manifest miscarriage of justice.[64] This is not the exceptional case where the evidence weighs heavily against conviction.[65] Accordingly, we overrule the third assignment of error.

## V. Sentencing

{¶ 66} In his fourth assignment of error, Huffman challenges the trial court's imposition of more than the minimum sentence on each of the counts of illegal use of a minor and on each of the counts of pandering. The four offenses were felonies of the second degree, each allowing a prison term ranging from two to eight years.[66] The court imposed three-year prison terms on both counts of illegal use of a minor, and four-year prison terms on both counts of pandering.

{¶ 67} The trial court imposed more than the minimum sentence based on its findings under R.C. 2929.14(B)(2) that the minimum term would "demean the seriousness of the offender's conduct" and "[would] not adequately protect the public from future crime by the offender or others."

{¶ 68} While this appeal was pending, the Supreme Court of Ohio held, in *State v. Foster*,[67] that R.C. 2929.14(B) is unconstitutional in that it "require[s] judicial

---

64. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

65. Id.

66. R.C. 2929.14(A)(2).

67. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant." [68]

{¶ 69} The *Foster* court held that the unconstitutional provision could be severed.[69] Following severance, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." [70]

{¶ 70} In this case, because the imposition of more than the minimum sentences for the felonies of the second degree was based on an unconstitutional statutory provision, we sustain the fourth assignment of error.

{¶ 71} According to *Foster*, Huffman is entitled to a new sentencing hearing on the second-degree felonies.[71] On remand, the trial court must "consider those portions of the sentencing code that are unaffected by [*Foster*] and impose any sentence within the appropriate felony range." [72] Because the court will be sentencing Huffman to multiple prison terms, "the court is not barred from requiring those terms to be served consecutively. While [the defendant] may argue for reductions in [his] sentences, nothing prevents the state from seeking greater penalties." [73]

## VI. Conclusion

{¶ 72} Huffman's first three assignments of error are overruled. His fourth assignment of error is sustained. The judgment of the trial court is affirmed in part and reversed in part, and the sentences for the second-degree felonies are vacated. The cause is remanded for resentencing.

Judgment affirmed in part
and reversed in part,
and cause remanded.

HILDEBRANDT, P.J., and SUNDERMANN, J., concur.

---

68. Id., paragraph one of the syllabus.

69. Id., paragraph two of the syllabus.

70. Id., paragraph seven of the syllabus.

71. Id. at ¶ 105.

72. Id.

73. Id.