FILED

01/07/2019

Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE

## STATE OF TENNESSEE v. DAVID SCOTT HALL

———————————————

### No. M2015-02402-SC-R11-CD

———————————————

ROGER A. PAGE, J., with whom JEFFREY S. BIVINS, C.J., joins, dissenting.

I maintain that the Court of Criminal Appeals properly affirmed the defendant's conviction for attempted especially aggravated sexual exploitation of a minor.

As we held in *State v. Whited*, cited by the majority opinion, in child sexual exploitation cases, an appellate court's review of a lasciviousness determination is a mixed question of law and fact, evidence of which must be viewed "in a light most favorable to the verdict." 506 S.W.3d 416, 427 (Tenn. 2016) (citations omitted). In *Whited*, we explained that courts should use "commonsense observation of the particular features of the subject materials" to identify "sexual activity" or lasciviousness. *Id.* at 437. "[J]udges [should use] their good sense to consider [the *Dost* factors] or any other features of a depiction that might tend to make it sexual or lascivious." *Id.*

In reversing Whited's conviction for especially aggravated sexual exploitation of a minor, this Court held that the videos of the teenage girls did not constitute a "lascivious exhibition" of private body areas and, therefore, did not meet the statutory definition of "sexual activity." *Id.* at 447. In the *Whited* videos, the camera never focused on the victims' private areas, nothing indicated that the victims were "posed or coached," and "they [were] not in any unnatural or overtly sexual poses and appear[ed] unaware of the camera." *Id.* at 446. Thus, we concluded that, though the "question [was] close," "the minors in the videos are engaging in everyday activities that are appropriate for the settings and are not sexual or lascivious within the ordinary meaning of those terms." *Id.* at 447. Still, we noted that "the depiction of the defendant setting up the hidden camera portrays voyeurism and suggests a sexual connotation for the minor's engagement in everyday activities ordinarily done in the nude and in private," which "move[s] the perception somewhat further along the continuum in the direction of lasciviousness." *Id.* at 446.

Despite the conclusion that the evidence was insufficient to support a conviction for the completed crime, we determined that on remand, the State could retry the defendant on *attempted* especially aggravated sexual exploitation of a minor, a lesser-included offense, stating, "Considering the entirety of the record, 'the evidence in the record is not so insufficient' so as to preclude a finding of attempted production of child pornography." *Id.* at 448 (citations omitted); see also *State v. Grisham*, No. E2015-02446-CCA-R3-CD, 2017 WL 1806829 (Tenn. Crim. App. May 5, 2017), *perm. app. denied* (Tenn. Sept. 20, 2017) (citing *Whited* and modifying conviction for the completed crime to attempted especially aggravated sexual exploitation of a minor where defendant's hidden camera captured him setting up the camera in victim's bathroom and the nude victim entering and exiting the shower).

In the instant case, the Defendant did not successfully record a "lascivious exhibition." Consequently, he was not charged with the completed crime, but *attempted* especially aggravated sexual exploitation of a minor.[1] The pertinent question, therefore, is whether the Defendant *intended* to capture a "lascivious" image and whether he *believed* his placement of the camera in the victim's bedroom would cause such an image to be captured without further action by the Defendant. I reiterate that this is a question of fact, *see e.g.*, *State v. Buggs*, 995 S.W.2d 102, 107 (Tenn. 1999); *State v. Brown*, 311 S.W.3d 422, 432 (Tenn. 2010), for which "we give the State the strongest legitimate view of the evidence," *Whited*, 506 S.W.3d at 427. I also emphasize that the Defendant has already been convicted, and because a conviction removes the presumption of innocence that the Defendant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the Defendant, who must demonstrate to this Court that the evidence is insufficient to support the verdict. *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (citing *State v. Parker*, 350 S.W.3d 883, 903 (Tenn. 2011)).

---

[1] The attempt statute, as relevant to this case, defines criminal attempt as follows:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> . . . .
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part[.] . . .

Tenn. Code Ann. § 39-12-101 (2014).

The Defendant adamantly argues that even if he had succeeded at his endeavor, the resulting video would not constitute a "lascivious exhibition" and thus "sexual activity." However, the Defendant fails to recognize that while we cannot know what the resulting video would have shown under different circumstances, the State is only required to show the mental state for attempt. Because the Defendant was charged with attempt, rather than the completed crime, we need only consider what the Defendant "intend[ed]" or "believ[ed]" the video would show. Tenn. Code Ann. § 39-12-101(a)(2); *see also State v. Kimbrough*, 924 S.W.2d 888, 890 (Tenn. 1996) ("An attempt, by nature, is a failure to accomplish what one *intended* to do. . . . [A]n attempt requires a desired, or at least an intended, consequence." (citations and internal quotation marks omitted)).

Viewing the evidence in the light most favorable to the State to determine whether *any* rational trier of fact could have found that the Defendant intended or believed his hidden camera would capture a lascivious exhibition and thus sexual activity, *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972), the proof showed that in the mornings before school, the victim routinely took a shower, returned to her bedroom, and dressed for school in the open space between her dresser and her bed. On the morning of May 18, 2010, the Defendant went into the victim's bedroom while she was showering and placed his digital camera on her dresser. He turned the camera toward the area in which the victim would change clothes, made a test video, and then meticulously adjusted the camera's angle for several seconds before using the victim's clothes to conceal it. He then walked toward the victim's bed twice, "ruffled"[2] through her clothes, and left the room. The resulting video focused in on the victim's chest as she approached her dresser, and the moment before she grabbed the

---

[2] In criticizing the dissent's recitation of the facts, the majority states that the description of the Defendant "ruffling" through the clothes on the victim's bed is not supported in the record. I respectfully disagree. The *video* does not show the Defendant's actions in this regard, but the *record* supports this through the testimony of the victim. Seemingly discounting the victim's testimony, the majority posits that "our focus in evaluating lasciviousness must be on the images captured in the video." Indeed, having already concluded that the Defendant failed to complete the crime because the video did not, in and of itself, rise to the level of lasciviousness necessary to support a conviction, our inquiry must necessarily focus on the Defendant's intent, of which his actions before beginning the video are relevant. A criminal offense may, of course, be established exclusively by circumstantial evidence. *State v. Sexton*, 368 S.W.3d 371, 399 (Tenn. 2012) (citation omitted); *see also State v.* Echols, 382 S.W.3d 266, 283 (Tenn. 2012) (citing *State v. Dorantes,* 331 S.W.3d 370, 381 (Tenn. 2011) ("[T]his Court abolished any distinction between the standard of proof required at trial in cases based solely upon circumstantial evidence and that in cases where direct evidence of guilt is presented by the State."). "One's actions are circumstantial evidence of his intent." *State v. Brown*, 311 S.W.3d 422, 432 (Tenn. 2010) (quoting *State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993)).

camera, her chest—though fully-clothed due to her quick discovery of the hidden device—occupied the vast majority of the camera's frame. Even before the victim discovered the camera and approached the dresser, it was positioned so that only her torso from her shoulders to her upper-thighs was visible and not her face.

Afterwards, the Defendant gave multiple conflicting explanations for his recording of the victim. By my count, the Defendant gave four separate explanations for his conduct. First, on the morning of the incident, the Defendant claimed that he had not been in the victim's room at all that morning. Second, on the controlled telephone call with the victim's mother, the Defendant admitted that he had entered the victim's bedroom while waiting for the bathroom and that he must have forgotten his camera. Third, in his 2014 letter to District Attorney General Victor Johnson, III, the Defendant claimed that he entered the victim's room to feed her fish when he noticed his prescription sunglasses and, after looking around, his cellular telephone charger. He contended that he became distracted and left his camera behind. Fourth, at trial, the Defendant testified that he went into the victim's room when he heard an alarm as he passed by her open door. He noticed that the victim's telephone was connected to his charger and explained that he decided to feed the victim's fish while he was there. He testified that he then spotted his prescription sunglasses and forgot about the camera.

This Court has previously explained that "while a defendant's mental state is rarely subject to proof by direct evidence, it is within the authority of the [factfinder] to infer the defendant's intent . . . from surrounding facts and circumstances." *State v. Brown*, 311 S.W.3d 422, 432 (Tenn. 2010) (citations and internal quotation marks omitted). I maintain that giving the State the strongest legitimate view of the evidence, including the Defendant's lack of credibility, the proof outlined above supports a finding that the Defendant intended to capture some sort of "lascivious exhibition" of the victim's private body areas. It was reasonable for the trial court to find that the Defendant strategically placed and positioned his camera on the victim's dresser and that had the victim not discovered it, at a minimum, he believed he would have recorded a video capturing the victim's fully nude torso approaching her dresser.

I also agree with the Court of Criminal Appeals that given the angle and strategic placement of the camera on the victim's dresser and the small size of her bedroom it is likely "the focal point of the video would have been the victim's private areas," namely her bare chest as she leaned over her dresser to reach for her clothing. *State v. Hall*, No. M2015-02402-CCA-R3-CD, 2017 WL 1655616, at *8 (Tenn. Crim. App. May 2, 2017). This is the type of material that some courts have found to be even further along the

- 4 -

continuum towards lasciviousness and beyond mere voyeurism. *See United States v. Johnson*, 639 F.3d 433, 440 (8th Cir. 2011) (considering, among other factors, that "[a] reasonable jury could also have concluded that because the video clips show the females generally from their shoulders to their calves, including their naked breasts in the frontal views, that [the defendant] attempted to obtain images portraying them as sexual objects and that their facial features were apparently of little or no importance"). As noted in *Whited*, appellate courts from other jurisdictions have determined that hidden-camera videos of nude minors constituted a "lascivious exhibition" because the camera focused or "zoomed in" on the minor's private body areas. *Whited*, 506 S.W.3d at 444, 446 (citing *People v. Sven*, 848 N.E.2d 228, 233 (Ill. App. Ct. 2006) (in which the focal point of the tape made by the defendant was on the victim's genitals); *Asa v. Commonwealth*, 441 S.E.2d 26, 29 (Va. Ct. App. 1994) (in which photos taken by the defendant contained close-up views of the victim's genitals)); *see also, e.g., State v. Huffman*, 847 N.E.2d 58, 70 (Ohio Ct. App. 2006) (upholding conviction under a similar statute due to "the secretive nature of the videotaping and its blatant focus on the victim's genitals").

In stressing the similarities between the facts of this case and the facts of *Whited*, I believe that the majority does not give sufficient consideration to the most important distinguishing factor: The defendant in *Whited* was charged with the completed crime of especially aggravated sexual exploitation of a minor, while the Defendant in the case before us was charged with the lesser-included offense of attempt. I again emphasize that we cannot know for certain what the video in this case would have shown had the victim failed to discover the hidden camera. Indeed, the Defendant may have intended something far more sexualized. The problem I seek to illustrate is that the Defendant has failed to carry his burden on appeal of showing that *no* rational trier of fact could have found that the Defendant intended or believed his hidden camera would capture sexual activity. I recognize that this case—not unlike *Whited*—presents a very close question. However, under the particular facts presented here, the highly deferential standard of review, and this "intensely fact-bound question," I cannot agree with the majority's conclusion that the evidence was insufficient to support the Defendant's conviction for attempted especially aggravated sexual exploitation of a minor.

For these reasons, I respectfully dissent from the majority's decision. I am authorized to state that Chief Justice Bivins concurs in this dissent.

_____
ROGER A. PAGE, JUSTICE

- 5 -