OPINION
{¶ 1} On May 13, 2005, a Franklin County Grand Jury returned a 27-count indictment against appellant, Fred L. McCown, Jr. Appellant was charged with five counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04 and 22 counts of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323. Eleven of the 22 counts alleged that appellant photographed Michelle Gilgien, a minor and who was not his child or ward, in a state of nudity or that he created or transferred material showing Ms. Gilgien in a state of nudity, in violation of R.C. 2907.323(A)(1), all second degree felonies. The remaining 11 counts alleged possession of photographs of a minor, not his child or ward, in a state of nudity, in violation of R.C.2907.323(A)(3), all fifth degree felonies. All 27 counts were alleged to have taken place on or about the period between May 1, 2001 and September 1, 2001.[1]
 {¶ 2} On November 10, 2005, following a jury trial, appellant was found not guilty on the five counts of unlawful sexual conduct with a minor, but guilty of the first eight counts of taking photographs of a minor in a state of nudity, not guilty on counts nine through 11 and guilty of the remaining 11 counts of possession of photographs of a minor in a state of nudity. On January 10, 2006, the trial court sentenced appellant to four years on each of the first eight counts, photographing a minor in a state of nudity, eight months on each of the 11 counts of possession of photographs of a minor in a state of nudity. The trial court ordered that all of the sentences were to be served concurrently for a total of four years in prison. Appellant was classified as a sexually oriented offender.
 {¶ 3} The victim, Michelle Gilgien, is appellant's niece. Ms. Gilgien was born on February 20, 1985 and was 20 years old at the time of trial. She was between 15 and 16 years of age at the time of the offenses, which were alleged to have occurred between May and November 2001. During this time, Michelle was dating appellant's nephew, Jonathan Scott, and she often spent the weekends at appellant's home.
 {¶ 4} Michelle testified that while she was staying at appellant's home, he asked to take what he referred to as "original pictures" of her. When she agreed to be photographed, appellant told her to undress and pose. At first, Michelle refused to undress, but appellant persisted and eventually she agreed. Michelle testified that while taking photographs, appellant touched her vaginal area. When she asked him to stop, he told her he was not going to hurt her and that if she told anyone what had occurred, he would deny it.
 {¶ 5} After appellant photographed her, he downloaded the digital images onto disks and labeled them. Michelle saw appellant viewing the photographs on his computer several times thereafter. Somewhere between six months and one year after appellant photographed Michelle in the nude, she took the disks containing the photographs from appellant's home and hid them.
 {¶ 6} In February 2005, Michelle accompanied a friend to Children's Hospital. While there, Michelle approached Detective Timothy Mounts, a member of the Columbus Police Department sexual abuse squad. She told Detective Mounts about the photographs taken by appellant. About a week later, she gave the disks to Detective Mounts. Michelle testified that she did not report appellant's acts earlier because she was ashamed and afraid.
 {¶ 7} After he received the disks of photos from Michelle, Detective Mounts interviewed appellant. Appellant initially denied taking any of the pictures. However, upon further questioning, appellant admitted he took three of the photos, exhibit Nos. 4, 5 and 6 that had been recovered from one of the disks. In these three photographs, Michelle was posed fully clothed in appellant's kitchen. Appellant said the photos were taken around Thanksgiving of that year. Appellant also admitted that he printed off the labels on the disks, but did so at Michelle's request. He denied knowing the contents of the disks and said he did not ask Michelle what was on them.
 {¶ 8} At trial, the prosecution presented exhibit Nos. 4 through 19, 16 photographs recovered from one of the computer disks. Exhibit Nos. 4 through 6 were the three photographs that appellant admitted taking when Detective Mounts interviewed him. Exhibit Nos. 7 and 8 were photographs with Michelle wearing a tank top and underwear. Exhibit Nos. 9 and 10 displayed Michelle in the nude from the waist up. Exhibit Nos. 4 through 10 were all taken in the kitchen of appellant's home. In exhibit Nos. 11 through 13, Michelle was shown posing in lingerie while exhibits Nos. 14 through 19 show Michelle naked in appellant's shower.
 {¶ 9} Appellant's nephew, Jonathan Scott, testified that he, not appellant, took all of the photographs labeled as exhibit Nos. 4 through 19. Scott further testified that he took all of the pictures during a weekend in which he and Michelle were staying at appellant's home. Scott described the photographs in detail.
 {¶ 10} Appellant testified on his own behalf, immediately after Scott. Although Scott had claimed to have taken all of the photographs, appellant admitted at trial that he took the photograph labeled exhibit No. 4, but denied taking the other photos. Appellant's prior statement to Detective Mounts in which he had admitted taking three of the photographs contradicted his trial testimony.
 {¶ 11} Appellant asserts six assignments of error:
First Assignment of Error: The court improperly prevented cross-examination of the complaining witness concerning prior false allegations of misconduct leveled against others.
Second Assignment of Error: The trial court erroneously cut off inquiry as to the alleged victim's motivation to level false accusations.
Third Assignment of Error: The court erroneously failed to instruct the jury on the definition of nudity as set forth inState v. Young (1988), 37 Ohio St. 3d 249.
Fourth Assignment of Error: The evidence was legally insufficient to support appellant's conviction.
Fifth Assignment of Error: The Court erroneously overruled appellant's motions for acquittal pursuant to Criminal Rule 29.
Sixth Assignment of Error: Appellant's conviction was against the manifest weight of the evidence.
 {¶ 12} In his first assignment of error, appellant claims that he was denied his right to effectively cross-examine the victim regarding whether she had ever made false accusations of "misconduct" against a family friend and an uncle. In regard to the family friend, appellant's counsel asked the victim: "Did he ever do anything to you?" The witness answered: "No, he did not." The trial court sustained an objection to the question and defense counsel moved on. (Tr. 65.) Defense counsel next inquired about the victim's uncle: "Did you ever accuse him of doing anything?" The trial court sustained an objection. A bench conference was conducted but is not part of the record on appeal. Counsel did not pursue the question and moved on to a different subject. (Tr. 65-66.) At the conclusion of the testimony of the witness, the court and counsel for both parties discussed the substance of the bench conference and their respective positions. The court offered to allow defense counsel to proceed if there was a foundation for the line of inquiry. (Tr. 73-76.)
 {¶ 13} A trial court has broad discretion in the admission or exclusion of evidence and a reviewing court will not disturb such rulings absent an abuse of that discretion. State v. Myers,97 Ohio St.3d 335, 348, 2002-Ohio-6658, citing State v. Maurer
(1984), 15 Ohio St.3d 239, 265. An abuse of discretion is more than an error of law or judgment. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 14} Ohio Evid.R. 611(B) allows cross-examination of all relevant matters and issues that may affect credibility. Ohio Evid.R. 608(B) provides:
Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
Prior false accusations may be admissible under Evid.R. 608(B) to test the credibility of the witness. However, the rules do not grant free reign to cross-examine a witness on any subject the questioner may chose. It is improper to attempt to communicate by innuendo through the examination of a witness when the inquiring party does not have a good-faith basis for the question. SeeState v. Gillard (1988), 40 Ohio St.3d 226, modifying State v.Williams (1977), 51 Ohio St.2d 112.
 {¶ 15} Appellant states that his ability to establish a foundation for his questions was cut off by the state's objection. (Appellant's brief, at 10.) We disagree. The record of the discussion among counsel and the court shows that the court offered to permit defense counsel to re-open the inquiry on cross-examination if there were some foundation for the questions. (Tr. 76.) Defense counsel did not respond to the court's offer and did not suggest that there was a good-faith basis for his questions. Without some indication that counsel had a good-faith basis to inquire, the questions were improper. SeeGillard, supra. Under the circumstances, we cannot say that the trial court abused its discretion in ruling on the admissibility of this evidence. Therefore, the first assignment of error is overruled.[2]
 {¶ 16} In his second assignment of error, appellant argues that he was denied his right to present extrinsic evidence to demonstrate possible bias on the part of the victim and that she had a motive to testify falsely. Appellee counters that evidence of bias or improper motive was irrelevant in this case.
 {¶ 17} Appellant testified on his own behalf. Appellant claimed that in December 2004, the victim discovered she was pregnant and asked appellant if she could live with him. According to appellant, when he said she could not live at his house, the victim became upset because she had nowhere else to go. (Tr. 132.) This occurred two months before the victim contacted Detective Mounts and provided him with the digital photographs in question. It appears that this impeaching evidence was received without objection and was before the jury.
 {¶ 18} Defense counsel also attempted to question appellant about disparaging comments appellant said he had made about Michelle's late stepfather and which upset Michelle.[3] The trial court found the question "so speculative[,] I'm just not going to allow it." (Tr. 139.)
 {¶ 19} Evidence of bias or motive to testify falsely is always relevant and admissible under Evid.R. 616(A). No foundation is required before presenting extrinsic evidence to demonstrate the possible bias of a witness. State v. Williams
(1988), 61 Ohio App.3d 594, 597.[4]
 {¶ 20} Relevant evidence is defined in Evid.R. 401. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that the victim may have been upset with appellant over comments he made about her deceased stepfather meets the definition of relevant evidence. However, although relevant, evidence is subject to the balancing test of Evid.R. 403 and may be subject to exclusion.
 {¶ 21} Evid.R. 403 provides as follows:
(A) Exclusion mandatory
Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
(B) Exclusion discretionary
Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence. A trial court has broad discretion to apply the balancing test of Evid.R. 403 and decide whether evidence should be admitted or excluded.State v. Campbell (1994), 69 Ohio St.3d 38, 51. Absent a demonstration in the record that the trial court did not do so, it is presumed that a trial court has followed and applied Evid.R. 403 in the admission or exclusion of evidence. Therefore, we must presume that the trial court correctly applied Evid.R. 403 when it considered whether to admit evidence that the victim was upset when appellant denied her request to live at his home during her pregnancy and evidence that the victim was upset when appellant made disparaging comments about her late stepfather. The former was admitted while the latter was excluded.
 {¶ 22} Appellee argues that, because the photographs of the victim were taken five years before she contacted the police, that alleged motives to testify falsely could not have existed at the time the crimes were committed. (Appellee's brief, at 13.) However, the real issue is whether the alleged disparaging comments were made at or near the time that the victim spoke to police, not when the offenses occurred.
 {¶ 23} The record does not indicate when the victim's stepfather died or when appellant may have made disparaging comments about him. The time frame in which the alleged disparaging comment was made in relation to the victim's disclosure of the photographs to police could be significant. For example, if the disparaging comment was made immediately before the victim contacted police, its probative value would be greater than if the comment was made sometime before, when the probative value would be minimal at best and might be considered cumulative. Counsel's proffer does not provide specifics other than to say that the victim "became upset around the time that these charges surfaced." (Tr. 139.) The lack of information about when the statement was made limits our ability to review the trial court's decision under Evid.R. 403(B).
 {¶ 24} A trial court is given "wide latitude * * * to impose reasonable limits" on the scope of cross-examination. Delawarev. Van Arsdall (1986), 475 U.S. 673, 679, 106 S.Ct. 1431. The admission of evidence which is collateral to the issues presented at trial and probative only as to the credibility of a witness lies within the sound discretion of the trial court. State v.Kirkland (1984), 18 Ohio App.3d 1, 4. Generally, cross-examination on matters affecting credibility is permitted under Evid.R. 611(B). However, the right to cross-examination is not absolute, but is addressed to the discretion of the trial court. State v. Braxton, Franklin App. No. 04AP-725,2005-Ohio-2198, citing State v. Lukens (1990),66 Ohio App.3d 794, 801.
 {¶ 25} In this case, appellant gave unrebutted testimony that the victim was upset with him when he refused to allow her to stay at his home during her pregnancy. The vague reference to an uncomplimentary comment made about the victim's late stepfather was cumulative to impeaching evidence already before the jury. Under the state of the record before us, we cannot say that the trial court clearly abused its discretion in excluding that evidence.
 {¶ 26} Moreover, error in the exclusion of evidence of bias of a witness is subject to harmless error analysis. See Lukens,
at 805-806. Assuming that the trial court erred in excluding the "disparaging comment" evidence, we find the error would be harmless beyond a reasonable doubt.
 {¶ 27} At trial, appellant admitted that he took the photograph marked State's exhibit No. 4. Exhibit No. 4 was taken in appellant's kitchen. The background in exhibit No. 4 shows a distinctive purple drinking glass on the counter along with other dishes on the counter and cookware on the stove. Detective Mounts testified that appellant admitted that he took not only State's exhibit No. 4, but, also, exhibit Nos. 5 and 6. Both exhibit Nos. 5 and 6 were taken in appellant's kitchen. Both show the same distinctive purple drinking glass on the counter along with the other dishes.
 {¶ 28} Exhibit Nos. 7, 8 and 9 are photographs also taken in the kitchen of appellant's home. The victim is wearing panties. Each of the three photographs is a close-up of the victim's buttocks. In exhibit No. 7, the victim is pointing to her buttocks. In exhibit No. 9, the photo is of the victims buttocks with her panties pulled aside. Exhibit Nos. 7, 8 and 9 show the same distinctive purple drinking glass and other items on the kitchen counter. In addition, each photo shows cloth draped over a table. The cloth bears the logo or emblem of the Columbus Blue Jackets hockey team. The location of the dishes, in particular, the purple glass, is strong evidence that each of these photographs was taken at the same time as exhibit Nos. 4, 5 and 6.
 {¶ 29} Exhibit No. 10 is a full frontal photo of the victim, nude except for a pair of bikini-style panties pulled down to reveal the victim's pubic area. As with the other photos, the distinctive purple drinking glass, cookware and dishes are on the counter in precisely the same position as in the other photos and the Blue Jackets cloth drape is in the background. It is apparent that exhibit Nos. 4, 5, 6, 7, 8, 9 and 10 were taken at the same time. Appellant admitted taking exhibit No. 4 and gave a statement admitting he took exhibit Nos. 5 and 6. The only reasonable inference to be drawn is that appellant took exhibit Nos. 7 through 10 as well. This circumstantial evidence corroborates the victim's testimony that appellant took all of the photographs.
 {¶ 30} Based on the foregoing, we find that, if the trial court erred in excluding the "disparaging statement" evidence offered to impeach the victim, any error by the trial court was harmless beyond a reasonable doubt. The second assignment of error is overruled.
 {¶ 31} In his third assignment of error, appellant asserts that the trial court committed plain error in neglecting to instruct the jury of the definition of "nudity" as set forth inState v. Young (1988), 37 Ohio St.3d 249, paragraph one of the syllabus.[5] Following closing arguments of counsel, the trial court instructed the jury as follows:
Before you can find the defendant guilty of illegal use of a minor in nudity oriented material or performance in any or all of the Counts 1 through 11, you must find beyond a reasonable doubt that * * * the defendant did photograph a minor, who's not the defendant's child or ward, in a state of nudity * * *.
(Tr. 186.) Although the trial court went on to define "material," the court did not provide a definition of "nudity."
 {¶ 32} A depiction of nudity, without more, is protected expression. New York v. Ferber (1982), 458 U.S. 747,102 S.Ct. 3348. In Young, supra, the Supreme Court of Ohio narrowed the application of R.C. 2907.323 to nudity that is either a lewd exhibition or involves a graphic focus on the genitals of a minor. Id. at paragraph one of the syllabus. The constitutionality of this narrowed version of the statute was upheld against a First Amendment over breadth challenge. Osbornev. Ohio (1990), 495 U.S. 103, 110 S.Ct. 1691.
 {¶ 33} Appellant reads both Young and Osborne to require that both an exhibition of a nude minor and photographs that focus on the genitals of a nude minor must be lewd in order to survive First Amendment scrutiny. In appellant's view, photographs that focus on the genitals of a minor without being lewd violated the First Amendment. Two Ohio appellate courts appear to have accepted appellant's position. See State v.Kerrigan, Greene App. No. 2005-CA-114, 2006-Ohio-4279,[6]
and State v. Walker (1999), 134 Ohio App.3d 89.[7]
 {¶ 34} The syllabus of a decision of the Supreme Court of Ohio states the law of the case. Cassidy v. Glossip (1967),12 Ohio St.2d 17, paragraph six of the syllabus. An intermediate appellate court is not free to ignore a syllabus nor is an intermediate appellate court free to consider a syllabus to be obiter dictum.
In the past, this court has * * * concluded that when obiterdictum appears [in a syllabus], it must be so recognized and considered. [Citations omitted.] However, that determination is a function reserved exclusively for this court. Until such a determination is made, the syllabus is presumed to be the law of the case and all lower courts are bound to adhere to the principles set forth therein.
Smith v. Klem (1983), 6 Ohio St.3d 16, 18.
 {¶ 35} The syllabus of Young, supra, is stated in the disjunctive and prohibits either a lewd exhibition or materials that contain a graphic focus on the genitals of a minor. While the body of the opinion states: "lewdness is a necessary element of nudity under R.C. 2907.323(A)(3)," as an intermediate appellate court, we are not free to use the language of the opinion to modify the first paragraph of the syllabus. Smith,
supra. That is a role reserved exclusively for the Supreme Court of Ohio.
 {¶ 36} Of course, the Supreme Court is the final arbiter on federal constitutional law. Accepting for purposes of discussion that Osborne requires that materials which focus on a minor's genitals be lewd before the statute will survive constitutional challenge, nevertheless we find no basis for reversal in this case. First, we note that, although given an opportunity to do so, appellant failed to object to the instructions. (Tr. 148.) "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30. Therefore, appellant is precluded from claiming error in the instructions to the jury unless the instructions constitute plain error under Crim.R. 52(B).
 {¶ 37} Pursuant to Crim.R. 52(B), plain errors or defects that affect substantial rights may be noticed even though they were not brought to the attention of the trial court. However, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long
(1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 38} Plain error must be obvious and outcome-determinative.State v. Sanders (2001), 92 Ohio St.3d 245, 257. An erroneous jury instruction will not warrant reversal as plain error unless it can be said that, "but for the error, the outcome of the trial clearly would have been otherwise." Long, at paragraph two of the syllabus. See, also, State v. Cunningham,105 Ohio St.3d 197, 2004-Ohio-7007; Adams, at 154.
 {¶ 39} The terms lewd or lewdness are not legal terms of art but are words of common usage. See State ex rel. Rear DoorBookstore v. Tenth District Court of Appeals (1992),63 Ohio St.3d 354, 358. The term "lewd" is defined in Webster's Third New International Dictionary (1986) as: "sexually unchaste or licentious * * * lascivious * * * inciting to sensual desire or imagination." Ohio courts have found sufficient evidence of lewdness in photographs of minors similar to the photographs involved herein. See State v. Woods, Summit App. No. 22267,2005-Ohio-2681, leave to appeal denied, 106 Ohio St.3d 1547,2005-Ohio-5343 (photographs of a 16 year old female that displayed her naked breasts and pubic hair protruding over a bikini bottom); State v. Haven, Wayne App. No. 02CA-0069,2004-Ohio-2512, reversed on other grounds, 105 Ohio St.3d 418,2005-Ohio-2286 (images that focused on the breasts and genitals of a pubescent female standing outside a bathtub); State v.Stoner, Miami App. No. 2003 CA 6, 2003-Ohio-5745 (images that focused on the pubic area of young girls using a restroom);State v. Huffman, 165 Ohio App.3d 518, 2006-Ohio-1106, discretionary appeal allowed in State v. Huffman,110 Ohio St.3d 1437, 2006-Ohio-3862 (photographs that focused on the genitals of a minor female in a tanning bed).
 {¶ 40} Here, exhibit No. 10 shows the minor's naked breasts and pubic hair made visible by pulling her bikini bottom down. Compare Haven, supra. Exhibit No. 11 depicts the minor posing with a sheer top pulled up to reveal her breasts and her pubic area clearly visible through sheer panties. In exhibit Nos. 12 and 13, the camera was positioned between the minor's legs, focused upward to take close-up views of her pubic area and bare breasts. In both photographs, the minor's pubic area is clearly visible through the same sheer panties shown in exhibit No. 11. Finally, exhibit Nos. 14, 15, 16, 18 and 19 show the minor in a shower and each photograph focuses on the minor's genitals.[8] Each photograph meets the definition of "lewd" contained in State ex rel Rear Door Bookstore, supra. Each photograph focuses graphically on the genitals of the minor.[9] This is not that exceptional case where, but for the failure to give the restricted definition of "nudity" espoused by appellant, the result of the trial clearly would have been different. Therefore, we do not find plain error in the failure to employ the narrowed definition of "nudity" in Young
and, arguably, Osborne, supra.
 {¶ 41} Appellant's third assignment of error also raises a separate claim of ineffective assistance of counsel. The ineffectiveness claim is based on counsel's failure to object to the jury instructions. Appellee asks that we apply App.R. 12(A)(2) and disregard the ineffectiveness claim because it is not separately raised and argued as required by App.R. 16(A). Appellee also argues that appellant improperly raised this claim in his reply brief as a seventh assignment of error.
 {¶ 42} An appellant is required to separately state and argue each assignment of error, and a reviewing court "may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 12(A)(2). Although the third assignment of error presents two distinct claims of error and, therefore, technically, does not comply with App.R. 16(A), we choose to decide both issues on their merits rather than on a procedural basis. As a result, appellant's ineffectiveness claim, designated as a seventh assignment of error in his reply brief will be discussed as part of the third assignment of error.
 {¶ 43} The standard of review in a claim of ineffective assistance of counsel is slightly different than the standard of review for plain error. As noted above, plain error occurs when, but for the error, the outcome of the trial clearly would have been different. In contrast, to reverse upon a claim that counsel was ineffective requires a reasonable probability that, but for the errors of counsel, the result would have been different.
 {¶ 44} Judicial review of counsel's performance must be highly deferential. Strickland v. Washington (1984),466 U.S. 668, 689, 104 S.Ct. 2052; State v. Bradley (1989),42 Ohio St.3d 136, 142. "Because of the difficulties inherent in making the evaluation, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, at 689. Moreover, "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." Bradley, supra, at 142.
 {¶ 45} To prove the prejudice prong of an ineffectiveness claim, the accused must demonstrate that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, at 694.
 {¶ 46} The Supreme Court specifically chose the "reasonable probability" standard as opposed to other, lesser standards for judging the prejudice prong of an ineffectiveness claim. "In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice." Bradley, at 142. Strickland explained the basis for the "reasonable probability" standard. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet the test, c.f. United States v.Valenzuela-Bernal, 458 U.S. 858, 866-867, * * * and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."Strickland, at 693. With those standards in mind, we turn to appellant's ineffectiveness claim.
 {¶ 47} A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, at 697. As noted above, before a reviewing court may reverse based on a claim that counsel was ineffective, the court must conclude that, but for the alleged error or errors of counsel, it is reasonably probable that that result of the proceeding would have been different. Stated another way, we must determine whether it is reasonably probable that, had the jury instructions included the narrowed definition of nudity, appellant would have been found not guilty.
 {¶ 48} Of necessity, this analysis requires a review of the photographs in evidence. We reviewed the photographs in conjunction with appellant's third assignment of error above and concluded that the specific photographs are a lewd, graphic focus on the genitals of the minor. Therefore, we cannot say that, had the narrowed definition of nudity been given, there is a reasonable probability that the jury would have reached a not guilty verdict. Having found no merit to appellant's plain error and ineffectiveness of counsel claims, the third assignment of error is overruled. For the same reasons, the seventh assignment of error raised in the reply brief is overruled.
 {¶ 49} Appellant's fourth assignment of error asserts that the verdict is not supported by sufficient evidence. Appellant's sixth assignment of error claims the verdict is against the manifest weight of the evidence. Although reviewed under different standards, both the fourth and sixth assignments of error are interrelated. Accordingly, we will treat them together.
 {¶ 50} The legal concepts of weight and sufficiency of the evidence are both quantitatively and qualitatively different.State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Sufficiency is a term of art, meaning that legal standard which is applied to determine whether there is sufficient evidence on each element of an offense to allow the case to be decided by a jury. Id. at 386. Sufficiency is a test of adequacy. Whether the evidence is sufficient or adequate to sustain a verdict is a question of law. Id.
 {¶ 51} In this case, if believed, the testimonial and demonstrative evidence presented supports each element of the offenses for which appellant was found guilty beyond a reasonable doubt. The victim testified that appellant took the photographs and downloaded them to his computer. Therefore, he both created the images and possessed them. The jury was not required to believe appellant's nephew who testified that he took all of the photographs. In fact, appellant contradicted at least some of the nephew's testimony. We have determined that the photographs portray a lewd display that focuses on the genitals of a minor. That evidence is sufficient to support each element of the counts upon which appellant was found guilty. Therefore, the test for adequacy is met. The conviction rests on sufficient evidence. The fourth assignment of error is overruled.
 {¶ 52} A conviction that rests on sufficient evidence may, nonetheless, be against the manifest weight of the evidence. In reviewing a manifest weight claim, an "appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony." Thompkins, at 387. Appellant argues that "[n]othing in the circumstances supports Ms. Gilgien's account over Mr. Scott's." (Appellant's brief, at 22.) We have reviewed the entire record and weighed the evidence and all reasonable inferences to be drawn therefrom and have considered the credibility of the witnesses. Although the victim could not be precise in her recall of some details and the specific dates when the events took place, overall, her testimony was consistent. In comparison, appellant and his nephew gave conflicting testimony and appellant's trial testimony differed to some degree with his statement to police. In his statement, appellant first denied taking any photographs and then admitted to taking three. At trial, appellant's nephew testified that he took all of the photographs. Immediately after the nephew's testimony, appellant took the stand and admitted he took one of the same photographs that his nephew claimed he had taken. The jury chose to believe the victim rather than appellant and his nephew. Coupled with the circumstantial evidence that at least a number of the photos were taken at the same time in appellant's kitchen, we conclude that the jury acted reasonably in resolving the conflicting testimony. We cannot say that the jury lost its way and created a manifest miscarriage of justice. The verdict is not against the manifest weight of the evidence. The sixth assignment of error is overruled.
 {¶ 53} Appellant's fifth assignment of error argues that the trial court erroneously overruled his motion for judgment of acquittal on the counts that charged unlawful sexual activity with a minor, R.C. 2907.04(A). Unlawful sexual activity with a minor occurs when the offender is 18 years of age or older while the minor is 13 years old but less than 16 years of age. Appellant points out that the victim was born on February 20, 1985. The original indictment alleged that she was less than 16 years old when the sexual activity allegedly took place between May and November of 2000. When the indictment was amended to reflect the year 2001, the victim was 16 years old and appellant could not be guilty of having unlawful sexual activity with a minor. Appellant concedes that he was found not guilty of these counts, but argues that submission of those counts to the jury may have had an impact during deliberations.
 {¶ 54} Although defense counsel moved for judgment of acquittal on all counts, counsel did not point out that the victim was 16 years old at the time. (Tr. 102-103.) It seems that both parties and the court overlooked the change in the minor's age. The motion should have been sustained on that ground. However, appellant has not demonstrated any prejudice from allowing the jury to consider the sexual activity counts. From the outset of trial, the jury was aware that appellant was charged with unlawful sexual activity with a minor. There is no basis to conclude that submitting those counts to the jury somehow prejudiced appellant. If anything, the verdict shows that the jury was discerning when it reviewed the evidence. The fifth assignment of error is overruled.
 {¶ 55} Having reviewed and overruled each of the assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Klatt, P.J., and Sadler, J., concur.
[1] The original indictment was amended without objection to reflect a change in dates from 2000 to 2001.
[2] Appellate review is limited to the record on appeal. It is unclear from the record in this case whether the rape shield statute was or was not applicable. The questions posed to the victim: "Did he ever do anything to you?" and "Did you ever accuse him of doing anything?" are so vague that it is impossible to discern whether the questions referred to accusations of sexual activity or conduct totally unrelated to the rape shield statute, such as an assault or theft. Therefore, we do not accept appellant's invitation to speculate on what may or may not have been known by counsel for either party on this subject.
[3] The proffer does not indicate when the stepfather died or when the alleged disparaging statements were made.
[4] The federal courts and a majority of the state courts require a foundation before extrinsic evidence of bias or motive to testify falsely may be admitted. However, Ohio follows the minority rule in this regard and no foundation is required. SeeWilliams, at 597.
[5] State v. Young involved a challenge to R.C. 2907.323 on First Amendment grounds.
[6] In Kerrigan, after applying the narrowed definition of "nudity," the appellate court found that although the video images showed naked adult and minor males exercising in a gymnasium or in a boxing ring, none of the images focused on the genitals of the participants. Therefore, the images were not lewd.
[7] See, however, the dissent in Walker wherein Judge Harsha notes that the syllabus states the law of the case and an intermediate appellate court lacks authority to pronounce a syllabus to be obiter dictum.
[8] Exhibit No. 17, also taken in the shower, is a close-up view of the minor's buttocks.
[9] Although exhibit No. 10 shows the minor in full-frontal nudity, the focus remains on her genitals and pubic hair visible as she pulled down her bikini bottom.