STATE OF NORTH CAROLINA v. ALTON EUGENE HARRIS, JR.

No. 743A85

(Filed 7 April 1987)

**1. Rape and Allied Offenses § 5; Homicide § 21.6— felony murder—attempted rape—evidence sufficient**

    There was sufficient evidence to sustain a conviction for felony murder based on attempted rape where the body of the victim was found on its back; the victim's legs had been spread apart, the victim's sweat pants had been removed and panties were entwined with the sweat pants as if both had been removed at the same time; the victim had multiple stab wounds; and defendant's clothes had on them blood of the same type as the victim.

**2. Criminal Law § 102.6— felony murder—argument from statement not in evidence—no error**

    The trial court did not err in a murder prosecution arising from an attempted rape by not intervening *ex mero motu* to stop the prosecutor's argument to the jury that a male voice was heard saying "I don't want to hurt you. I want to show you something" when there was no testimony that any male voice was heard saying "I want to show you something." The jury knew that the prosecutor at that point was reconstructing what could have happened in the victim's apartment and the prosecutor's theory that the statement not in evidence meant that defendant wanted sexual intercourse could just as well have been argued from what had been introduced into evidence.

APPEAL by defendant from judgments entered by *Preston, Judge,* at the 15 October 1985 Session of Superior Court of ORANGE County. Heard in the Supreme Court 12 February 1987.

The defendant was tried for the first degree murder and the attempted rape of Freshteh Golkho. The evidence for the State showed that at 7:15 p.m. on 16 March 1985 several residents of J Building, Royal Park Apartments, Chapel Hill, North Carolina,

heard an argument, screams and what appeared to be a struggle within Apartment J-1. David Smith, who resided in Apartment J-4, testified he heard someone in the apartment say, "I don't want to hurt you" and he heard someone with a female voice say, "Let me see my face."

The police were called, entered the apartment and found the body of Freshteh Golkho on the floor. The body was on its back and disrobed from the waist down. The legs were spread apart. The defendant's wallet was below the legs of the body "and outward a bit." To the left of the wallet were green sweat pants rolled up with panties entangled in them. The body had multiple stab wounds and there was a pool of blood on the floor to the left of the victim's head. To the right of her head was a green army shirt lying on and partially covering a butcher knife.

The defendant was arrested and he told the officers who questioned him that he went to Apartment J-1 to pay money he owed to his girlfriend who lived in the apartment with the victim. His girlfriend was not there. He said that Ms. Golkho and he had an argument and that he was attempting to leave when Ms. Golkho attacked him with a butcher knife which he knocked from her hand. He picked the knife up and Ms. Golkho ran toward him and into the knife. The defendant told the officers he did not remember stabbing Ms. Golkho other than when she ran into the knife, nor did he remember removing any of her clothes.

The investigating officers searched the defendant's residence and found the clothes the defendant was wearing when Ms. Golkho was killed. The clothes had blood on them which was consistent in type with Ms. Golkho's blood. Part of the blood was inside the defendant's pants. The defendant did not offer evidence.

The court charged the jury that they could find the defendant guilty of first degree murder if they found the murder was done with premeditation and deliberation or if they found it was felony murder based on the felony of attempted rape. The jury found the defendant not guilty of murder based on premeditation and deliberation but guilty of felony murder. The jury also found the defendant guilty of attempted rape. They recommended life imprisonment for the murder charge. The court held the attempted first degree rape charge merged with the first degree murder as it was the underlying felony on which the defendant was found

guilty of first degree murder. The defendant was sentenced to life in prison.

*Lacy H. Thornburg, Attorney General, by William N. Farrell, Jr., Special Deputy Attorney General, for the State.*

*Ann B. Petersen, for defendant appellant.*

WEBB, Justice.

[1]   The defendant first assigns error to the denial of his motion to dismiss made pursuant to N.C.G.S. § 15-173 and N.C.G.S. § 15A-1227(a)(1) on the ground there was not sufficient evidence to sustain a conviction of felony murder. This Court in *State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308 (1983), dealt with the sufficiency of the evidence to support a conviction of felony murder based on the underlying felony of attempted rape. In *McDougall* the evidence was that the victim's body was found on its back with the legs spread wide, her feet nearly up to her buttocks, knees raised and apart, and the victim's nightgown drawn up to her upper chest, exposing her left breast. Many of the wounds had been inflicted while the victim was in a prone position. The defendant was arrested shortly after the body was discovered and found to have blood on his clothes which was of the same type as that of the victim. This Court said, "These facts support a reasonable inference that McDougall caught Diane Parker in the yard, knocked or threw her to the ground on her back, pulled her nightgown up over her chest, and parted her legs in an attempt to rape her. She resisted and fought back, and McDougall stabbed her to death. This evidence is sufficient to survive a motion for nonsuit on the theory of murder during an attempted rape."

The salient facts in *McDougall* are remarkably similar to the facts of this case. The body of each victim was found on its back. The legs of each victim had been spread apart. The nightgown of the victim in *McDougall* had been pulled up over the body. The sweat pants of Ms. Golkho had been removed. Panties were entwined within the sweat pants as if the sweat pants and panties were removed at the same time. Both victims had multiple stab wounds. The clothes of both defendants had blood on them of the same type as that of the victims. As in *McDougall* we hold the evidence in this case supports an inference that the defendant knocked or threw Ms. Golkho to the floor, forcibly removed her

sweat pants and parted her legs in an attempt to rape her. It further supports the inference that she resisted and the defendant stabbed her to death. This is sufficient evidence to survive a motion to dismiss.

In order for a person to be found guilty of attempted first degree rape the State must prove that the accused had the intent to commit the first degree rape and committed an act that goes beyond mere preparation, but falls short of actual commission of the offense. *State v. Boone,* 307 N.C. 198, 297 S.E. 2d 585 (1982). The defendant argues that there is not sufficient evidence for the jury to find beyond a reasonable doubt that the defendant intended to engage in vaginal intercourse with the victim by force and against her will. He argues that the only evidence of a sexual assault is the fact that the victim was found unclothed below the waist and her legs were sprawled apart at the time she was discovered. He admits that it is possible to infer that her sweat pants and panties were removed by force and that her legs were forced apart, but he argues these are not the only inferences that may be made. He argues further that in order to convict the defendant the jury has to make inferences on an inference which it cannot do. *See State v. LeDuc,* 306 N.C. 62, 291 S.E. 2d 607 (1982) and *State v. Fair,* 291 N.C. 171, 229 S.E. 2d 189 (1976). These contentions by the defendant were answered in *McDougall.* That case holds that evidence as to the position of the victim's legs and evidence of the removal of clothes from the lower part of the victim's body is sufficient with other evidence to be submitted to the jury on a charge of felony murder when the underlying felony is attempted rape. If we were to sustain this assignment of error we would have to overrule *McDougall.* The defendant's first assignment of error is overruled.

[2] The defendant next argues that it was error for the superior court not to intervene *ex mero motu* and stop the prosecuting attorney from making a certain argument to the jury. No objection to the argument was made at the trial. The prosecuting attorney in recounting the evidence said that a male voice was heard saying "I don't want to hurt you. I want to show you something." There was no testimony that any male voice was heard saying "I want to show you something." The prosecutor then argued to the jury what could have happened in the apartment and used the words "I just want to show you something" to argue that

the defendant wanted to show the victim sexual intercourse. Wide latitude is given to counsel in the argument of hotly contested cases. What constitutes an improper jury argument is ordinarily left to the sound discretion of the trial judge. *State v. Williams*, 276 N.C. 703, 174 S.E. 2d 503, *rev'd on other grounds*, 403 U.S. 948, 29 L.Ed. 2d 860, *on remand*, 279 N.C. 338, 183 S.E. 2d 106 (1971). An argument in capital cases is subject to appellate review for the existence of gross improprieties which make it plain that the trial court abused its discretion in failing to correct the prejudicial matters *ex mero motu. State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203 (1982).

In this case the prosecutor argued a sentence, "I want to show you something," which was not in evidence. This sentence was not in itself particularly damaging to the defendant but the prosecutor then argued that it was intended to mean the defendant wanted to show the victim sexual intercourse. The prosecutor could just as well have argued from the statement, "I don't want to hurt you," which was in evidence, that the defendant wanted to have sexual intercourse. The jury knew that the prosecutor at this point in his argument was reconstructing what could have happened in the apartment. It was no more prejudicial for the prosecutor to argue as he did from the statement that was not in evidence than it would have been if he had argued from what had been introduced into evidence. We hold it was not such a gross impropriety that it was an abuse of discretion for the court not to intervene *ex mero motu* and stop this part of the argument. This assignment of error is overruled.

In the judgments of the Superior Court of Orange County we find

No error.