973 So.2d 481 (2007)
The STATE of Florida, Appellant,
v.
Ivory COVINGTON, II, Appellee.
No. 3D06-3070.
District Court of Appeal of Florida, Third District.
October 17, 2007.
Rehearing and Rehearing Denied February 14, 2008.
Bill McCollum, Attorney General, and Paulette R. Taylor, Assistant Attorney General, for appellant.
Epstein Becker & Green and Joseph P. Klock, Jr., and Rashida M. Ivy, Miami, for appellee.
Before WELLS, and CORTINAS, JJ., and FLETCHER, Senior Judge.
Rehearing and Rehearing En Banc Denied February 14, 2008.
WELLS, Judge.
The State of Florida appeals from an order granting Ivory Covington's motion to dismiss under Florida Rule of Criminal Procedure 3.190(c)(4). We reverse, finding the motion legally insufficient to support dismissal because the motion neither demonstrates that no disputed material facts exist, nor establishes that Covington could not have committed the charged offenses. See State v. Walthour, 876 So.2d 594, 595 (Fla. 5th DCA 2004) (confirming that the purpose of a rule 3.190(c)(4) motion is to determine whether the undisputed facts on which the State will rely to prove its case establish a prima facie case that would permit a jury to find the defendant guilty of the crime charged).
*482 On December 14, 2005, the State filed a four count information charging Covington with possession of cocaine with intent to sell, manufacture or deliver (count I); resisting an officer with violence (count II); possession of cannabis (count III); and possession of a firearm by a convicted felon (count IV). Covington moved to dismiss the information, claiming that the State could not make a prima facie case against him on these charges because the facts detailed in two affidavits attached to his motion were not in dispute and confirmed that he had no drugs or firearm in his possession; that he had no access to the place where the drugs and firearm were found; and that he did not resist arrest.
On the morning of the hearing of the motion to dismiss, the State filed a traverse denying Covington's factual assertions and offering the sworn statement of the officers who arrested Covington to demonstrate that factual disputes existed and that a prima facie case against Covington could be made. The traverse was stricken as untimely and insufficient, and the motion to dismiss granted because the trial court concluded that the facts detailed in the affidavits of Vincent Herout and Frederick James, which Covington relied on to support the motion, were undisputed and exculpated him of all charges. We do not agree.
In State v. Ortiz, 766 So.2d 1137, 1141-42 (Fla. 3d DCA 2000), this court noted that rule 3.190(c)(4) motions to dismiss are treated like summary judgment motions in civil cases:
A motion to dismiss, made pursuant to Florida Rule of Criminal Procedure 3.190(c)(4), must allege and establish that "there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant." State v. Kalogeropolous, 758 So.2d 110, 111 (Fla.2000). A motion to dismiss in a criminal case is analogous to a motion made for summary judgment in civil cases, and as such "[b]oth should be granted sparingly." State v. Bonebright, 742 So.2d 290, 291 (Fla. 1st DCA 1998); Kalogeropolous, 758 So.2d at 111. See also State v. McQuay, 403 So.2d 566, 567-68 (Fla. 3d DCA 1981) (stating that "[a] motion to dismiss should be granted only where the most favorable construction to the state would not establish a prima facie case of guilt. And if there is any evidence upon which a reasonable jury could find guilt, such a motion must be denied." (emphasis added) (citation omitted)).
In filing this kind of motion, a defendant bears the burden of showing the absence of a material factual dispute and that the facts fall short of a prima facie case of the crime charged. See State v. Sammons, 889 So.2d 857, 858 (Fla. 4th DCA 2004). Where the motion fails to make such a showing, it is legally insufficient and may be denied without a State response. See id.; State v. Paleveda, 745 So.2d 1026, 1027 (Fla. 2d DCA 1999) (finding that the "State's failure to file a traverse is not, in itself, fatal to a criminal charge, as the trial court must still consider the facts alleged in the motion to dismiss to determine whether a prima facie case has been established"); State v. Purvis, 560 So.2d 1296, 1298 (Fla. 5th DCA 1990) ("If the undisputed facts as alleged in the motion to dismiss are legally insufficient, then any response from the State would be superfluous, and the motion may be summarily denied."). Here, we find that Covington's motion was legally insufficient and should have been summarily denied even in the absence of a State response.
Vincent Herout's affidavit establishes no facts whatsoever relevant to the charges against Covington and does not support *483 dismissal. In fact, the affidavit establishes only that Herout was in no position to testify about whether any contraband was found on Covington at the time of his arrest or whether Covington resisted arrest. According to the affidavit, Herout was in bed on the evening of November 15, 2005, when Covington burst into his bedroom and hid under the bed. As soon as the police entered, Herout went into the living room where he remained during the entire time (ten to fifteen minutes) the police were in the bedroombehind a closed doorwith Covington. Under the circumstances, Herout's affidavit could not establish as undisputed fact either that no contraband was found on Covington at the time of his arrest or that Covington did not resist arrest.[1]
Frederick James' affidavit also establishes no facts to support dismissal. James' affidavit confirms only that some contraband and a firearm were found in an exterior hallway approximately thirty feet from the apartment where Covington was found hiding. The affidavit does not establish that Covington had no access to the place where these items were found as James so boldly states.
According to James, after being stopped, by the police on the ground floor of the apartment complex where he lived, he saw Covington and another man on the third floor walkway of the complex running in a westerly direction. After Covington's companion ducked into an apartment, James lost sight of Covington and did not see him again until after he had been arrested and was being removed from another apartment which was, coincidentally, the same apartment occupied by James and Herout. Although James could not see where Covington had gone before entering his apartment, he nonetheless surmised from snippets of overheard conversations that Covington did not go near the place where some drugs and a firearm were later found:
I saw the man that was with [Covington] duck into a third floor window of the last apartment Ion the walkway] that runs east-west (See Position "C")[[2]], [which walkway is] parallel to the [walkway on which] . . . my apartment [is located] on the south side of the building (See Position "E"). [Covington] kept running to the west, down the cut and disappeared, presumably along the outside walkway that runs along the backside of the apartments that run northsouth on the third floor (See Position
At that point, someone on the first floor yelled: "We got him. We got him." A voice came over the radio and said. "No. Upstairs." Some of the men then ran upstairs.
Whoever was talking on the radio and giving directions apparently could see [Covington] because he ran along the back of the apartment complex . . .
The voice kept directing the men to the side of the building where my apartment was (See Position "E"), and where apparently [Covington] had ended up.
After a couple of minutes, I was allowed to go upstairs. As I walked towards my apartment, I was stopped *484 again on the north-south hallway that leads to my row of apartments (See Position ["[F"). I could see just to the right of that passage way, a white plastic chair that sits outside an apartment two units to the east of mine on the third floor (See Position "G"). Close by the chair was a trash box or can. . . .
. . . .
As the police passed by the chair, heard someone yell: "It's a gun. It's a gun."
Meanwhile, I could hear the voices of men who were apparently in my apartment. They kept saying: "It's got to be here somewhere." They searched my apartment completely and found nothing.
As all of this was going-on, the men caught the other young man who had initially gone into the apartment window on the north side of the building. Based on where they found him (See Position "I"), he had to have run along the north[-]south walkway and then east on the east-west walkway. His route would have taken him past the plastic chair and the trash pile.
. . . .
After they had searched my apartment, they went out into the hallway ands [sic] looked around there too. When they got to the trash can and looked through it, I heard one of them say that they had found drugs. I saw one of the men lift some plastic bags out of the trashcan and say: "Look at this; look at this."
. . . .
It was clear to me that no drugs or anything else were found on [Covington]. The drugs were found outside my apartment, about 30 feet away from my apartment.
The men in black found both the gun and the drugs in a position that [Covington] had not passed. Based upon the voices coming from the radio, it was clear that [Covington] ran along the outside pathway (See Position "D") and then jumped into the window of my apartment. He was never within 30 feet of either the chair or the trash pile, and had no drugs or gun on him when he left my apartment.
(Emphasis added).
James' statements regarding Covington's connection to the drugs and firearm found in the hallway are nothing more than speculation and do not establish as fact, much less undisputed fact, that Covington either did not or could not have stashed or thrown the drugs and firearm only feet from the apartment where he was found hiding.[3] This testimony, like that provided by Herout, is simply insufficient to support dismissal of the charges against Covington.[4]See Morgan v. Cont'l Cas. Co, 382 So.2d 351, 352 (Fla. 3d DCA 1980) (stating that affidavits which are based entirely upon speculation, surmise and conjecture are legally insufficient).
Because Covington failed to meet his initial burden of demonstrating either the *485 complete absence of disputed material facts or that the undisputed facts show that the State cannot establish a prima fade case of guilt, the motion to dismiss the information should have been summarily denied. See State v. Gutierrez, 649 So.2d 926, 927-28 (Fla. 3d DCA 1995) (concluding that a motion to dismiss an information "should have been summarily denied even in the absence of any response from the State" because the defendant "failed to meet his initial burden of demonstrating the complete absence of any material facts"); State v. Torres, 375 So.2d 889, 890 (Fla. 3d DCA 1979) (stating that "[o]n its face, the motion to dismiss was legally insufficient and should have been summarily denied by the trial court" where it "fail[ed] to demonstrate that the undisputed material facts do not establish a prima facie case of guilt against the defendant").
Accordingly, the dismissal order is reversed and the cause remanded with directions to reinstate the charges against Covington.
NOTES
[1] The remainder of Herout's affidavit regarding the sounds he heard coming from the bedroom and Covington's appearance when he was removed from the apartment, is simply irrelevant. So, too, are Herout's statements that the police did not tell him that drugs or a gun had been found on Covington; that the police searched his apartment for contraband but found none; that he overheard the officers being told to search the hallway for the "stuff"; and that at a later date he learned that drugs had been found in the hallway.
[2] These references are to a sketch of the apartment complex appended to James' affidavit.
[3] Since James was not inside the apartment when Covington was arrested, he could not supply any facts about what was found in Covington's possession when he was arrested or whether he resisted arrest.
[4] This all ignores the sworn arrest affidavit, which, although stricken with the traverse, was considered by the trial court in dismissing these charges. That affidavit states that an officer saw Covington sitting on a chair on the third floor of the apartment complex and that this officer saw Covington remove a revolver from his waistband and throw it onto a chair. Notably, this all occurred before James saw Covington and his companion running along the third floor corridor. The arrest affidavit also states that Covington kicked at the officers while they were attempting to take him into custody and that a search incident to the arrest revealed "53 baggies of suspect cocaine, 4 baggies of suspect marijuana, and $217.00 in U.S. Currency in [Covington's] groin area."