CORTINAS, J.
 

 We review the trial court’s order granting the defendant’s motion to dismiss nineteen counts of the information against Kimberly Brabson, III. Those counts charged the defendant, Brabson, with promotion of a sexual performance by a child, in violation of section 827.071(3), Florida Statutes (2007). We reverse because, under the facts of this case, the determination of whether a particular performance constitutes “actual lewd exhibition of the genitals” creates a factual inquiry for a jury and not a legal question for the court.
 

 Defendant coached a girls’ swim team at the school where he was employed. Over a period of several months, defendant approached numerous girls on the swim team with variations of the same story. The girls were asked to try on the swimsuits under the pretense of determining sizes for purposes of placing orders for the team swimsuits. Brabson convinced the girls to try on the swimsuits in his office. Unbeknownst to the girls, prior to their entering, Brabson had set up a video camera in his office and had positioned the swimsuits at specific locations that would place the girls within the camera’s view as they changed clothing.
 

 The video tape created by the defendant is essentially broken up into three distinct parts. In the first portion of the video, the bathing suits are placed at a certain distance away from the girls such that the camera’s view ranges from below the shoulders of each of the victims to above their knees. The faces of the girls are visible depending on the individual victim’s height and whether she bends down. Brabson is clearly seen setting up the camera and positioning the bathing suits in his office at various points throughout the video while the girls are out of his office.
 

 The footage of the second segment of the video shows that Brabson modified the location of the camera within the office and also altered the proximity of the bathing suits to the camera. During the second segment of the video, the camera was placed much closer to the victims as they undressed, causing them to be videotaped at waist-level. This segment clearly focused on the genital region of the victims when they faced the camera. The third segment of the video essentially contains the same footage as the first segment, but retains the actual time lag in between girls entering and exiting Brabson’s office.
 
 [1]
 

 In response to the charges, Brab-son filed a motion to dismiss the nineteen counts of promoting a sexual performance by a child. The court granted the motion and dismissed all nineteen counts. We review this matter de novo.
 
 See State v.
 
 
 *1121
 

 Pasko,
 
 815 So.2d 680, 681 (Fla. 2d DCA 2002).
 

 In criminal cases, motions to dismiss should be granted as sparingly as motions for summary judgment in civil cases.
 
 State v. Ortiz,
 
 766 So.2d 1137, 1141-42 (Fla. 3d DCA 2000). “Dismissals in criminal cases are to be cautiously granted.”
 
 State v. Feagle,
 
 600 So.2d 1236, 1240 (Fla. 1st DCA 1992) (citing
 
 State v. Hargrove,
 
 552 So.2d 281, 283 (Fla. 4th DCA 1989)). In order to defeat a motion to dismiss, “[t]he State need only specifically dispute a material fact alleged by the defendant or add additional material facts that meet the minimal requirement of a prima facie case.”
 
 State v. Kalogeropolous,
 
 758 So.2d 110, 112 (Fla.2000). “In meeting its burden of establishing a prima facie case, the State can use circumstantial evidence, and all the inferences made are resolved in its favor.”
 
 Id.
 
 (citing
 
 Boler v. State,
 
 678 So.2d 319, 323 (Fla.1996)). In opposing a motion to dismiss, the State does not need to demonstrate facts sufficient for sustaining a conviction, but instead must only show the barest prima facie case.
 
 Hargrove,
 
 552 So.2d at 282. Moreover, it is not within the province of the trial court to make factual determinations on a motion to dismiss or to consider the weight of conflicting evidence or the credibility of witnesses.
 
 Ortiz,
 
 766 So.2d at 1142.
 

 Section 827.071(3), Florida Statutes (2007) provides, in pertinent part, as follows:
 

 A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he or she produces, directs, or promotes any performance which includes sexual conduct by a child less than 18 years of age. Whoever violates this subsection is guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
 

 “Sexual performance” is defined as:
 

 Any performance or part thereof which includes sexual conduct by a child of less than 18 years of age.
 

 Section 827.071(l)(h), Florida Statutes (2007).
 

 “Sexual conduct” is defined within the statute as:
 

 actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or sadomasochistic abuse; actual lewd exhibition of the genitals; actual physical contact with a person’s clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast, with the intent to arouse or gratify the sexual desire of either party; or any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed. A mother’s breastfeeding of her baby does not under any circumstance constitute “sexual conduct.”
 

 Section 827.071(l)(g), Florida Statutes (2007) (emphasis added).
 

 The Florida Supreme Court interpreted an earlier version of section 827.071 in
 
 Schmitt v. State,
 
 590 So.2d 404 (Fla.1991).
 
 [2]
 

 Schmitt
 
 involved a father who was accused of taking nude photographs of his daughter while she was between the ages of eight and twelve years old. Among the issues reviewed in
 
 Schmitt
 
 was whether an affidavit was sufficient to support a finding of probable cause in the issuance of a search warrant. The probable cause affidavit recited the daughter’s assertions of the various nude photographs taken of her by her father as well as the various pho
 
 *1122
 
 tography and video equipment and tapes and recordings kept by the father in their home. The affidavit also alleged a violation of section 827.071(5), which prohibited any depiction known to include “sexual conduct” by a child.
 
 Id.
 
 at 408. As part of its analysis, the Florida Supreme Court noted that the terms “lewd” and “lascivious” are synonymous and “require an intentional act of sexual indulgence or public indecency, when such act causes offense to one or more persons viewing it or otherwise intrudes upon the rights of others.”
 
 Id.
 
 at 410 (citing
 
 Rhodes v. State,
 
 283 So.2d 351, 356-57 (Fla.1973)) (footnote omitted). The Court further noted that “it is evident beyond all doubt that any type of sexual conduct involving a child constitutes an intrusion upon the rights of that child, whether or not the child consents and whether or not that conduct originates from a parent.”
 
 Id.
 
 at 410-11. In distinguishing mere nudity from a lewd or lascivious display, the court considered the photographer’s intent and actions.
 
 Id.
 

 While it is conceivable that one might view the allegations in the present affidavit as depicting simple nudity, we believe the magistrate had a substantial basis for concluding otherwise. The affidavit’s factual allegations indicated that Schmitt did not treat the nudity of himself, his daughter, and others in the offhand, natural manner that might be expected if the conduct were purely innocent-for example, if they were nudists. Rather, the affidavit shows he made nudity a central and almost obsessive object of his attention. Thus, the magistrate reasonably could have believed that Schmitt’s conduct toward his daughter included the “lewdness” element required by the statute. While nudity alone would not have sufficed, this overall focus of Schmitt’s conduct tended to show a lewd intent and thus created a substantial basis for believing that the search would fairly probably yield evidence of a violation of section 827.071. Thus, the magistrate must be upheld. [Illinois
 
 v.] Gates
 
 [462 U.S. 213] 103 S.Ct. [2317] at 2332 [76 L.Ed.2d 527 (1983) ].
 

 Schmitt,
 
 590 So.2d at 411 (emphasis added).
 

 Thus, the lewdness requirement under section 827.071(l)(g) may be satisfied by the intent of the person promoting the performance which included sexual conduct by the child.
 
 See id.
 
 In the case before us, the victims were completely unaware that they were being filmed and any right to privacy they may have expected while changing in the closed, windowless office was violated. Furthermore, the girls were not engaged in what could be considered typical day-to-day activities as they were most certainly manipulated into changing their clothes, which they would not otherwise have done in Brabson’s office.
 

 Although there are no Florida cases addressing the specific facts before us, other jurisdictions have addressed similar statutes in nearly identical factual scenarios. For example, one Ohio court applied a similar statute prohibiting the creation, production, direction or transfer of material or a performance that shows a minor in a state of nudity, in a case where the owner of a tanning salon was secretly recording his female patrons during tanning sessions, including at least one underage girl.
 
 [3]
 

 State v. Huffman,
 
 165 Ohio App.3d 518, 2006-Ohio-1106, 847 N.E.2d 58. In
 
 Huffman,
 
 the tanning salon’s owner had placed hidden wireless cameras in different areas of his salon, with a direct feed into his DVD players. After being noti-
 
 *1123
 
 fíed, and receiving what appeared to be photographic evidence of one of the hidden cameras, police obtained a warrant and executed it, finding camera equipment and numerous DVDs containing videos of female patrons using the tanning rooms.
 
 Id.
 
 at 522-23, 847 N.E.2d 58. Several DVDs containing pornographic images of children were also discovered.
 
 Id.
 
 at 523, 847 N.E.2d 58. In challenging his convictions for the illegal use of a minor in nudity-oriented performance, Huffman argued that the state failed to prove that graphic displays or lewd exhibitions were involved.
 
 Id.
 
 at 533, 847 N.E.2d 58. The appellate court disagreed, noting that:
 

 In this case, the state presented evidence of two digital videos of a 16-year-old gill as she used Huffman’s tanning facilities on two different dates. The images were captured by a camera hidden behind a fan near the tanning bed. The camera was positioned to focus on the girl’s genitals. During the recording of one of the videos, the camera was manually adjusted to capture a clearer image of the girl’s genitals.
 

 Given the secretive nature of the videotaping and its blatant focus on the victim’s genitals, we hold that the state presented sufficient evidence of lewdness to sustain Huffman’s convictions for illegal use of a minor in nudity-oriented material or performance.
 

 Id.
 
 at 534, 847 N.E.2d 58 (emphasis added.). As explained by the Ohio appellate court, the secretive nature of the recording coupled with the blatant focus on the genitalia of the victims sufficiently demonstrated lewdness. While no Florida cases have addressed this specific issue, we are persuaded by the Ohio court’s acknowledgement that the very nature of the filming with a focus on the genitalia demonstrates lewdness. In
 
 Fletcher v. State,
 
 787 So.2d 232 (Fla. 2d DCA 2001), this court found that a warrant application which alleged, in part, the presence of hidden cameras in the bathroom of Fletcher’s home and in his daughter’s bedroom did not provide sufficient probable cause to issue a warrant. The warrant application also alleged that, based upon the information received from Fletcher’s daughter, the police believed that the purpose of the hidden cameras was to produce child pornography. Child pornography, in turn, requires that suspect videos show children engaged in “sexual conduct” as defined in section 827.071(l)(g), Fla. Stat. (1997).
 
 Fletcher,
 
 787 So.2d at 235. The
 
 Fletcher
 
 court, while finding that the warrant application was not sufficient to justify the issuance of a warrant, distinguished
 
 Schmitt
 
 by noting that beyond alleging mere nudity, the warrant also “showed that
 
 Schmitt
 
 ‘made nudity a central and almost obsessive object of his attention’ and that an ‘overall focus of Schmitt’s conduct tended to show a lewd intent-’ ”
 
 Fletcher,
 
 787 So.2d at 235-36 (quoting
 
 Schmitt,
 
 590 So.2d at 411). The very issues
 
 Fletcher
 
 used to distinguish
 
 Schmitt
 
 are the same points that render
 
 Fletcher
 
 distinguishable from the case before us. In the instant case, as demonstrated by the defendant’s videotapes, nudity and female genitalia were the focus of Brabson’s filming. The second portion of the videotape shows that Brabson positioned the camera at waist-level and placed the bathing suits in relation to the camera in such a way that the victims’ genitalia became the focal point of the recording.
 

 The
 
 Fletcher
 
 opinion relied on
 
 Lockwood v. State,
 
 588 So.2d 57 (Fla. 4th DCA 1991). In
 
 Lockwood,
 
 the Fourth District Court of Appeal found that a video tape depicting a sixteen-year-old girl, apparently unaware that she was being filmed, “undressing, showering, towling herself dry, and performing other acts of feminine hygiene and donning clothing” did not meet the definí
 
 *1124
 
 tion of “sexual conduct” set forth in section 827.071(l)(g), Florida Statutes (1989) as applicable to section 827.071(5), Florida Statutes (1989).
 
 Lockwood,
 
 588 So.2d at 57. The
 
 Lockwood
 
 court specifically held:
 

 The issue presented for our determination is whether the tape contained a presentation that defendant knew included sexual conduct by a child. The record reflects that the tape does not show a presentation of sexual conduct as defined by the statute. The presentation shows, rather, the innocent, normal everyday occurrence of a female child undressing, showering, performing acts of female hygiene and donning her clothes, none of which meets any of the detailed sexual acts contained in the statute. It thus appears that the motion for judgment of acquittal should have been granted.
 

 Id.
 
 at 58.
 

 The case before us, however, does not involve mere nudity as did
 
 Fletcher
 
 and
 
 Lockwood,
 
 nor does it involve “normal everyday occurrence[s] of a female child undressing.”
 
 See Lockwood,
 
 588 So.2d at 58. The video also does not involve seemingly voluntary and willing participation in “naturism.”
 
 See State v. Kerrigan,
 
 168 Ohio App.3d 455, 458, 2006-Ohio-4279, 860 N.E.2d 816 (Ohio Ct.App.2006) (finding that videotapes depicting nude minors, along with nude adults in certain instances, engaging in activities such as swimming, boxing, or playing ball, did not violate a similar statute because they did not include “a lewd exhibition or a graphic focus on the genitals”). In
 
 Lockwood
 
 and
 
 Fletcher,
 
 the cameras were apparently placed in static locations and videotaped the nude victims in everyday activities, such as showering or dressing, occurring in bedrooms or bathrooms where such activities normally occur. In the instant case, Brabson placed the camera in his school office. Brabson then lured the girls to his office, where they otherwise would not have been undressing and changing into bathing suits, but for Brabsoris cajoling. Furthermore, the victims seem to have been enticed to change in the office with the intent that their nude bodies be visible to the camera and recorded. What we have before us is a clearly orchestrated plan by Brabson to videotape unsuspecting underage girls in a place where, but for Brabsoris machinations, they would never have undressed.
 

 In deciding cases involving the photography of nude minors, other jurisdictions have found that “the issue ... becomes whether lewdness is determined only by what is depicted, by the photographer’s intent, or both.”
 
 Purcell v. Commonwealth of Kentucky,
 
 149 S.W.3d 382, (Ky.2004). In
 
 Purcell,
 
 the defendant had taken a nude photograph of a minor male child under the pretense that the defendant had met with two women who were interested in having sex with him and the minor, but only after they exchanged nude photographs. Id. at 385. Although the defendant claimed to have destroyed the picture, the artist’s rendition, consistent with the boy’s testimony, depicted a full-frontal nude image of the child with his arms at his sides.
 
 Id.
 
 Identifying that “[a] few jurisdictions have held that a nude depiction of a child absent any explicit sexual conduct on the child’s part is
 
 per se
 
 not lewd,” the Supreme Court of Kentucky “[found] more persuasive the holdings of other jurisdictions that consider other factors, including the photographer’s intent and the intended reaction of the expected viewer, in determining whether a particular performance was a ‘lewd exhibition.’ ”
 
 Id.
 
 at 391 (citing
 
 United States v. Knox,
 
 32 F.3d 733, 747 (3rd Cir.1994)). Our Supreme Court’s holding in
 
 Schmitt
 
 appears to be entirely consistent with the Kentucky Supreme Court’s view that the lewdness requirement may be satisfied by the defendant’s intent.
 
 See Schmitt,
 
 590 So.2d at
 
 *1125
 
 411. The
 
 Purcell
 
 court relied on the test set forth in
 
 United States v. Dost,
 
 636 F.Supp. 828 (S.D.Cal.1986), where:
 

 [T]he
 
 [.Dost
 
 ] court enumerated six factors that may be considered in determining whether a particular exhibition is lewd,
 
 viz:
 

 1) whether the focal point of the visual depiction is the child’s genitalia or pubic area;
 

 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
 

 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
 

 4) whether the child is fully or partially clothed, or nude;
 

 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
 

 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.
 

 Purcell,
 
 149 S.W.3d at 392 (citing
 
 Dost,
 
 636 F.Supp. at 832).
 
 Dost
 
 did not require that all six factors be present before a depiction could be found to be lewd, but rather that the overall circumstances surrounding the visual depiction be examined, taking into account the age of the child.
 
 Dost,
 
 636 F.Supp. at 832;
 
 see also Purcell,
 
 149 S.W.3d at 392. The vast majority of jurisdictions that have addressed the issue have adopted the
 
 Dost
 
 factors for determining what constitutes a lewd or lascivious exhibition.
 
 See United States v. Arvin,
 
 900 F.2d 1385, 1391 n. 4 (9th Cir.1990) (approving jury instruction based on
 
 Dost
 
 factors);
 
 United States v. Wolf,
 
 890 F.2d 241, 244-45 (10th Cir.1989);
 
 United States v. Villard,
 
 885 F.2d 117, 122 (3d Cir.1989);
 
 United States v. Rubio,
 
 834 F.2d 442, 448 (5th Cir.1987);
 
 United States v. Mr. A.,
 
 756 F.Supp. 326, 328 (E.D.Mich.1991);
 
 Cummings v. State,
 
 353 Ark. 618, 110 S.W.3d 272, 279 n. 1 (2003);
 
 People v. Gagnon,
 
 997 P.2d 1278, 1282 (Colo.Ct.App.1999);
 
 People v. Bimonte,
 
 187 Misc.2d 677, 726 N.Y.S.2d 830, 835-36 (N.Y.Crim.Ct. 2001) (noting that
 
 Dost
 
 factors distinguish between innocent photographs and child pornography);
 
 Alexander v. State,
 
 906 S.W.2d 107, 110 (Tex.Crim.App.1995).
 

 We find the
 
 Dost
 
 test helpful in determining whether a particular exhibition is lewd. In the case before us, at least two of the factors are present. While the initial part of the tape shows a wider angle and focuses mainly on the area between the victims’ shoulders and above the knees, during the second segment, the defendant modified the camera’s location as well as the placement of the bathing suits so that “the focal point of the visual depiction is on the child’s genitalia or pubic area.”
 
 See Dost,
 
 636 F.Supp. at 832. Furthermore, many of the child victims are shown in complete nudity as they are changing into the bathing suits. Because the
 
 Dost
 
 test does not require that all factors be present, we are satisfied that enough evidence has been presented by the State to demonstrate a prima facie case against Brabson.
 
 See Hargrove,
 
 552 So.2d at 282.
 

 Accordingly, whether a depiction meets the
 
 Dost
 
 test is best left to the fact-finder.
 
 Purcell,
 
 149 S.W.3d at 393 (citing
 
 Knox,
 
 32 F.3d at 747);
 
 see also Arvin,
 
 900 F.2d at 1390 (“[WJhether the item to be judged is lewd ... is a determination that lay persons can and should make.” (citing
 
 United States v. Thoma,
 
 726 F.2d 1191 (7th Cir.1984))). Because issues of fact cannot and should not be resolved by a court on a motion to dismiss a criminal case, we reverse the trial court’s order granting dismissal.
 

 Reversed and remanded.
 

 [1]
 

 . The first segment appears to edit together the same separate instances visible in the third segment, but without the natural progression of time in between different girls present in the third segment.
 

 [2]
 

 . The relevant language in section 827.071, for purposes of this opinion, is unchanged.
 

 [3]
 

 . The statute applied was Ohio Rev. Code Ann. § 2907.323(A)(1).